# Commonwealth to use, Appellant, *v.* American Bonding and Trust Company.

*Principal and surety—Public officers—County treasurer—False statement to surety.*

There is no official duty on the part of the county treasurer to examine the account of a tax collector with the county and make report thereon to a person who proposes to become surety for the collector for the ensuing year. If he does so he is the mere agent of the surety to do what he is not officially obliged to do, and if he, or his attorney duly authorized, makes false answers to the questions propounded by the proposed surety, the county is not responsible for such answers, and the surety is not relieved from liability on its bond by reason of them.

Whether if the surety had called upon the treasurer for a certificate from his official accounts which he was bound to correctly keep of the balances against the collector for certain years specified, and he had as treasurer furnished a false statement, the surety would have been relieved, not decided.

Argued Feb. 3, 1903. Appeal, No. 2, Jan. T., 1903, by plaintiff, from judgment of C. P. Montgomery Co., Oct. T., 1901, No. 121, on verdict for defendant in case of Commonwealth to use of Montgomery County v. American Bonding & Trust Company and Jacob L. Loper. Before MITCHELL, DEAN, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Assumpsit upon a bond of suretyship. Before WEAND, J.

The opinion of the Supreme Court states the case.

The court gave binding instructions for defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* among others was (4) in giving binding instructions for defendant.

*J. P. Hale Jenkins*, with him *Irvin P. Knipe*, for appellant.—
The surety was not relieved by the statements by the treas-
urer's attorney: Loudon Savings Fund Society v. Hagerstown
Savings Bank, 36 Pa. 498; Ettinger v. Kemerer, 30 Legal Int.
125; Bower v. Washington County, 25 Pa. 69; Green v. North
Buffalo Twp., 56 Pa. 110; McSparren v. Neeley, 91 Pa. 17;
Johnston v. Patterson, 114 Pa. 398; Harrisburg v. Guiles, 192
Pa. 191.

*F. B. Bracken*, with him *N. H. Larzelere*, for appellee.—The
surety was discharged: Lauer Brewing Co. v. Riley, 195 Pa.
449; State v. Bates, 36 Vt. 387; Com. v. Wunch, 167 Pa. 186;
Buckwalter v. Lancaster County, 12 Pa. Superior Ct. 272;
Com. v. Middletown Borough, 3 Pa Dist. Rep. 639; Com. v.
Schneipp, 166 Pa. 401; Cannell v. Crawford County, 59 Pa.
196; Howell v. Com., 97 Pa. 332; Com. v. Ross, 5 Pa. C. C.
Rep. 593.

OPINION BY MR. JUSTICE DEAN, April 20, 1903:

Jacob L. Loper having made application to the county
treasurer of Montgomery for the appointment of tax collector
of Cheltenham township for the year 1898, then applied to the
American Bonding & Trust Company to become his surety.
Before executing the bond the surety company applied by letter
to A. C. Godschall, county treasurer, for information as to Loper,
and addressed to him a written schedule of questions with an-
swers blank for him to fill out; the treasurer did not live in Nor-
ristown, the county seat where he had his office, so he handed
the blank to Mr. Place, his private counsel, to answer the ques-
tions, who wrote the following answers to certain of the inter-
rogatories : " 15. Is there now to your knowledge any shortage
due you by the applicant ?   Answer, No.   He owes part of 1896
and 1897 duplicates of taxes uncollected by him.   *b.*   Has he
ever been short with you ?   Answer, No.   He has been slow in
collecting his taxes but pays as fast as he collects."

This schedule of interrogatories was addressed to Mr. Abram
C. Godschall with no addition of his official title.   It was signed,
" A. R. Place, solicitor for county treasurer," and was by him
returned to the surety company at Baltimore; thereupon, it
executed the bond as surety for Loper, the collector, and it was

duly accepted by the county treasurer. Loper became a defaulter for the year 1898. The county commissioners brought this suit on the bond; the surety made defense on the ground that the answers to its questions by the treasurer were false and consequently the bond was void. The court below instructed the jury that the evidence offered sustained the defense and that they must find for the defendant surety. We now have this appeal by the county, assigning for error the instruction of the court.

We will not waste time over the quibbling as to whether Place had authority to answer for the treasurer the interrogatories; we think with the court below, that the only fair inference from the evidence is, that he had full authority from the treasurer, and that his act must be taken as that of Godschall, who was the treasurer. The answers quoted, although not altogether false, were certainly not the whole truth in response to the questions. The treasurer was not bound to answer the questions at all, when Godschall did undertake to answer them, he was bound as a man of veracity to tell the truth; a public officer may not be bound to give information or answer questions, but when as a man he voluntarily does so, the moral obligation on him as a man to tell the truth remains in full force. In his answers to the questions he did not tell the truth; Loper was a defaulter for every year he had been collector.

It is not improbable that the surety company was mislead by Godschall's falsehood. But the question still remains, must the county suffer by his untruthfulness? There is a clear distinction running through all the cases as to how far the conduct of public officers will affect the public, and to what extent declarations by an agent of an individual or a private corporation will affect his principal. An illustration of the former will be found clearly defined in United States v. Kirkpatrick, 9 Wheaton, 720; of the latter in Lauer Brewing Co. v. Riley, 195 Pa. 449. The laxity of a public officer in the performance of his duty, his conduct, not in the line of his official duty, cannot be permitted, on grounds of public policy to prejudice the public. Assume for the sake of the argument, that the county treasurer was the representative of the county, though that is at least doubtful, then comes the question, in what particular does he

represent it? Clearly, only in those which pertain to his office. His morals outside of his official acts may be reprehensible and be the indirect cause of loss to others, but the public who elected or appointed him are not responsible. So here the public is not responsible for the untruthfulness of their officer in a matter where the public imposed upon him the performance of no duty. In this state under the act of 1834, the county treasurer is to faithfully perform the duties of his office, is to keep a just account of all county moneys that may come into his hands, deliver to his successor all books, documents and papers belonging to the office, and pay over to him any balance of county funds in his hands. There is no express or implied direction that he shall answer truthfully all questions put to him by third persons. He must keep correctly all official books and accounts; they will then, necessarily, show the exact financial relation to the county of those subordinates and others who have official transactions with the county treasurer. These accounts are public accounts, open to the public and accessible to all. Any third person desiring information can examine the accounts himself or employ an agent or attorney to do so and report to him. There is no official duty on the treasurer to examine and make such report; if he do so at the request of a third person, he becomes the mere agent of that person, to do what he is not officially obliged to do, and whether he performs the act well or ill it is something with which the public has no concern and is in no way responsible.

In his official acts he must tell the truth or the public suffers; for instance, it is his duty to receive the unpaid taxes on unseated lands and receipt therefor; if a taxpayer request a statement of the amount of such taxes, and pays according to the statement, although the amount be less than the real amount assessed, no valid sale of the land can be made in default of payment for the excess above the statement. But this is an official act and the public suffers because of the untruthfulness of its officer. But by appointing Godschall treasurer the public did not constitute him a "bureau of information" for the accommodation of all persons who chose to ask questions of him. We are of opinion the surety company had no legal right to ask these questions and when it did there was no official duty on the part of the officer to answer them; when he chose to do

so, he was the mere agent of the company just as any other person would have been of whom it might have made the same request.

Our opinion on this question is in accord with the principle of all the authorities from United States v. Kirkpatrick, decided in 1824, down to this time. Justice STORY who rendered the opinion in that case in which it was argued, that the gross laches of a public officer relieved the surety on an official bond, says, the general principle is, that laches, on the ground of public policy, is not imputable to the government; that the utmost vigilance of the government would not save it from losses if the doctrine of laches can be applied to the financial transactions of its officers. The principle in that case has been followed and cited with approval in a large number of our own cases. Bower and others v. Washington County, 25 Pa. 69, in its principal features was much like the case before us. One Kinnan had been appointed by the county commissioners tax collector of Peters township for the year 1848; he was then reappointed for the year 1849 and Bower and others became sureties on his official bond. There was on the statute book at the time an act which prohibited the reappointment of a collector who was in default on a duplicate for the preceding year. In the annual publication of the receipts and expenditures of the county, made by the commissioners, it was stated that Kinnan had paid up in full on his first duplicate when in fact he was a defaulter to a considerable amount. It was shown that the sureties had seen the statement of the commissioners, that Kinnan had paid in full, before they went upon his bond, and there was a strong inference that they had been thereby induced to become sureties. He became a defaulter on the second duplicate and the commissioners attempted to collect from the sureties. The sureties sought relief because of the false statement of the commissioners. This court held that the false statement by the officers did not bind the county, remarking, "Usually those who suffer by the mistakes and misconduct of public officers must look to them for compensation and not to the public." We are not sure that we would, on the facts, carry the decision so far as the court more than intimates in these last remarks. What we mean is this, if the surety company had called upon the treasurer for a certificate from the official accounts

which he was bound to correctly keep, of the balances against Loper for the years 1894, 1895, 1896, and 1897, and he had as a treasurer furnished a false statement, it might be the county would be answerable for the misstatement, because it would have had many of the marks of an official act which perhaps it would have been his duty as an officer to perform. But such question does not here arise and we do not decide it. What we do decide is, that the inquiry here, in these questions, was neither in form nor in fact inquiry as to the condition of Loper's official accounts with the county and the public is in no way answerable for their truthfulness. Therefore we sustain appellant's fourth assignment of error and reverse the judgment with a v. f. d. n.