# Commonwealth to use *v.* Fidelity & Deposit Company of Maryland, Appellant.

*Principal and surety—Bond—Trust and trustees—Past misconduct of principal—Judgment against principal.*

1. Where a trustee is surcharged by the orphans' court on the ground of gross negligence, and neither the trustee nor his surety takes an appeal from the decree, the surety cannot four years thereafter in a suit on the bond of suretyship allege that the trustee was not grossly negligent.

2. As to official bonds, bonds of indemnity and bonds to insure the faithful performance of duty, and to secure a proper accounting by persons in fiduciary relations, the rule is that a judgment against the principal is conclusive against his sureties as to his misconduct, and failure to properly account.

3. Application was made to a bonding company to become surety on the additional bond of a trustee. The application stated the amount of the entire trust estate, and that the bond was to secure the same. It also stated that the entire trust estate had come into the hands of the trustee, and that the purposes and nature of the bond were to secure to parties in interest the proper application of the principal and interest of the trust estate. The company made an investigation as to the amount of the trust estate, the character of the securities held by the trustee, and the investments made by him. The bond itself obligated the company to be answerable for the faithful discharge by the trustee of his duties, and that the trustee "shall faithfully apply all the assets, received by him in said trust estate." *Held,* that the bonding company was liable for any loss resulting from the misconduct of the trustee, either before or after the date of the execution of the bond.

Argued Feb. 10, 1900. Appeal, No. 123, Jan. T., 1908, by defendant, from judgment of C. P. Chester Co., Jan. T., 1907, No. 32, on verdict for plaintiff in case of Commonwealth to use of Benjamin W. Haines, trustee for Helen H. Holmes, under the will of Daniel B. Hinman, deceased, v. The Fidelity &

Deposit Company of Maryland. Before FELL, BROWN, MES-
TREZAT, ELKIN and STEWART, JJ. Affirmed.

Assumpsit on a bond of suretyship. Before HEMPHILL, P. J.
The facts are stated in the opinion of the Supreme Court.
The court refused binding instructions for defendant.
Verdict and judgment for plaintiff for $14,279.89. Defend-
ant appealed.

*Error assigned* was in refusing binding instructions for de-
fendant.

*William A. Glasgow, Jr.,* with him *John H. Hall* and *Wash-
ington Bowie, Jr.,* for appellant.—It is the general rule that
bonds are presumptively intended to secure, and are construed
to secure losses sustained after the date of their execution, and
not losses incurred previously thereto; and a surety is not bound
for losses incurred before the execution of his contract of surety-
ship, in the absence of anything in the bond itself, or the sur-
rounding circumstances, which clearly indicate his intention
to become so bound: Farrar v. United States, 30 U. S. 373;
United States v. Boyd, 40 U. S. 187; Myers v. United States, 1
McLean, 493; United States v. Spencer, 2 McLean, 405; Lon-
gan v. Taylor, 130 Ill. 412 (22 N. E. Repr. 745); Rochester v.
Randall, 105 Mass. 295; Bennett v. Haley, 142 Pa. 253; Prichett
Baugh & Co. v. Wilson, 39 Pa. 421; United States v. Giles,
13 U. S. 212; United States v. Linn, 42 U. S. 104; United
States v. Jones, 77 Fed. Repr. 717; Hyatt v. Grover & Baker
Sewing Machine Co., 41 Mich. 225 (1 N. W. Repr. 1037); State
v. Jones, 89 Mo. 470 (1 S. W. Repr. 355); Ward v. Hassell, 66
N. C. 389; Delo v. Banks, 101 Pa. 458; Spath's Est., 144 Pa.
383; Lancaster v. Frescoln, 192 Pa. 452; Armstrong v. State,
7 Blackf. (Ind.) 81; Lacoste v. Splivalo, 64 Cal. 35 (30 Pac. Rep.
571); Steele v. Reese, 14 Tenn. 263; Treasurers v. Taylor, 2
Bailey (S. C.), 524; Abrahams v. Jones, 20 Ill. App. 83; Chase
v. Ries, 10 Cal. 518; Ovington v. Smith, 78 Ill. 250; Lang v.
Pike, 27 Ohio St. 498; Miller v. Stewart, 22 U. S. 680; White
v. Com., 39 Pa. 167; Shackamaxon Bank v. Yard, 150 Pa. 351;
Busch's Est., 12 Phila. 53; State v. Howarth, 48 Conn. 207.

The language of the bond, the penal sum therein, and the circumstances under which it was given, affirmatively show that the bond was intended to assure the subsequent faithful discharge of his duties by the trustee: State v. Hood, 7 Blackf. 127; State v. Banks, 76 Md. 136 (24 Atl. Repr. 415); Lowry v. State, 64 Ind. 421; State v. Sanders, 62 Ind. 562; Williams v. State, 89 Ind. 570.

The cestuis que trustent are in no way wronged or injured by such limitation of the surety's liability, since they are secured by the bond previously given, liability upon which was not released by the death of the surety, whose estate remains liable: State v. Howarth, 48 Conn. 207.

The cases in which it has sometimes been held that a surety is liable for a loss incurred before the giving of the bond but discovered subsequently thereto, are predicated upon the fact or presumption that the moneys lost or embezzled came into or remained in the hands of the principal after the giving of the bond, and have no application to a case like the present where it conclusively appears that the loss in question was completed and sustained, and was known to the parties secured, previously to the giving of the bond, and where it is undisputed that there has been no addition or extension of such loss since the contract of suretyship was made: Choate v. Arrington, 116 Mass. 552; State v. Howarth, 48 Conn. 207; Thompson v. American Surety Co., 56 App. Div. 113 (67 N. Y. Supp. 564); Farrar v. United States, 30 U. S. 373; Beyerle v. Hain, 61 Pa. 226; Miller v. Com., 8 Pa. 444; White v. Com., 39 Pa. 167.

*J. Carroll Hayes,* with him *Wm. M. Hayes,* for appellee.— The bond was retrospective in its operation: Aldridge v. Eshleman, 46 Pa. 420; Colbourn v. Dawson, 10 Com. Bench, 765; Curling v. Chalklen, 3 M. & S. 502; Moore v. Hegeman, 72 N. Y. 376; Williamson v. Snook, 10 N. J. L. 65; Com. v. Rhoads, 37 Pa. 60; Knox v. Kearns, 73 Iowa, 286 (34 N. W. Repr. 861); Bank v. Barrington, 2 P. & W. 27; Com. v. Cox, 36 Pa. 442; DeHart v. McGuire, 10 Phila. 359; Hatch v. Attleborough, 97 Mass. 533; Choate v. Arrington, 116 Mass. 552; American

Surety Co. v. Pauly, 170 U. S. 133 (18 Sup. Ct. Repr. 552); Supreme Council v. Fidelity & Casualty Co., 63 Fed. Repr. 48; Tebbets v. Guarantee Co., 19 C. C. A. 281 (73 Fed. Repr. 95); Bank v. Fidelity & Deposit Co., 128 No. Car. 366 (38 S. E. Repr. 908); Walker v. Holtzclaw, 57 So. Car. 459 (35 S. E. Repr. 754).

In cases like this, where successive bonds have been given for the faithful execution of the trust, it has been repeatedly held that the loss or default is presumed to have occurred during the running of the last bond; and the surety, to be relieved, must show clearly that it occurred prior thereto: Kagay v. Trustees, 68 Ill. 75; Pape v. People, 19 Ill. App. 24; Kelly v. State, 25 Ohio, 567; Hartford v. Franey, 47 Conn. 76; Heppe v. Johnson, 73 Cal. 265 (14 Pac. Repr. 833); Readfield v. Shaver, 50 Maine, 36; Clark v. Wilkinson, 59 Wisc. 543 (18 N. W. Repr. 481); Douglas v. Kessler, 57 Iowa, 63 (10 N. W. Repr. 313); Com. v. Stambaugh, 164 Pa. 437; Beard v. Roth, 35 Fed. Repr. 397.

In cases of continuing trusts, where successive bonds have been given, the current of decisions holds the later sureties equally liable with the earlier ones for the losses whenever incurred, unless the later bond is clearly prospective in its terms: Pinkstaff v. People, 59 Ill. 148; State v. Buck, 63 Ark. 218 (37 S. W. Repr. 881); Roper v. Sangamon Lodge, 91 Ill. 518; Knox v. Kearns, 73 Iowa, 286 (34 N. W. Repr. 861); Pickens v. Miller, 83 No. Car. 543; Wolff v. Schæffer, 74 Mo. 154; Brown v. State, 23 Kans. 235; Merrells v. Phelps, 34 Conn. 109; Hartford v. Franey, 47 Conn. 76; Ellyson v. Lord, 124 Iowa, 126 (99 N. W. Repr. 582); Clark v. Wilkinson, 59 Wisc. 543 (18 N. W. Repr. 481).

OPINION BY MR. JUSTICE ELKIN, March 15, 1909:

In 1889 a trustee was appointed by the orphans' court of Chester county to take charge of a fund bequeathed by will for the benefit of a cestui que trust for life with remainder to her children. On the same day the trustee presented his bond with two sureties which were approved by the court and filed of record. In 1900, the trust estate not having been settled, the duties of the trustee still continuing, and one of the original

sureties on the bond having died, there arose some doubt as to the sufficiency of the bond to protect the trust estate, and steps were taken to secure a new bond for this purpose. Application was made to appellant, a bonding company, to become surety on the new bond. This company, organized for this and other kindred purposes, received the application and through its agents or representatives made such investigation as to the amount of the trust estate, the character of the securities held by the trustee and the investments made by him, as it deemed necessary to be fully informed of the nature and extent of the liability of the principal in order to determine whether it was a desirable contract of suretyship to make, and for the further purpose of being advised as to the assets in the hands of the trustee to be accounted for in order to fix a limitation upon the responsibility it was willing to assume. The trustee submitted a list of securities then held and investments then made by him, and counsel for appellant after examination reported the conditions as they then existed. There was no misrepresentation or concealment of any material fact, and we do not understand that there is any allegation of fraud, accident or mistake which could affect the rights of the parties here. Being in possession of the knowledge thus obtained, which we must assume was satisfactory, appellant executed the bond upon which this suit was brought, obligating itself in the penal sum of $15,000 to be answerable for the faithful discharge by the trustee of his duties and that said trustee "shall faithfully apply all the assets received by him in said trust estate." The contention earnestly made in the court below and ably pressed here is that the bond in question is binding upon the surety prospectively only and not retrospectively, that is to say, the burden upon the bonding company was to answer for the unfaithful discharge of his duties by the trustee after the date of the execution of the bond, and not for any dereliction of duty prior to that date, and that it was only bound to answer for a proper accounting by the trustee to the extent of the value of the assets in his hands when the second bond was approved or which came into his hands after that date. Under the facts of the present case, we think this position is not tenable. The appellant through its learned coun-

sel contends that the correct rule applicable in such case is that bonds so given should be construed as intended presumptively to cover future losses and not past defaults, unless there is something in the bond itself, or in the surrounding circumstances, to indicate a different intention. With the rule thus stated as a general proposition of law, we have no quarrel. However, it is one of those general rules to which there are so many exceptions under the facts of particular cases as to require the greatest care in its application in order that injustice may not be·done or the legal rights of parties be defeated. We cannot agree, that taking into account the language of the bond itself, the application made by the trustee to appellant specifying the nature of the bond required and the extent of the liability thereunder, and all the surrounding circumstances, including the character of the trust, its indefinite duration, the purpose for which the bond was given, and the investigation made for the purpose of determining prior to its execution the amount of assets in the hands of the trustees for which he was accountable, the presumption is that the contract of suretyship was only intended by the parties themselves or by the court which approved it, to apply to what may be termed future losses. Indeed, as we read the conditions of the bond in connection with the application and the surrounding circumstances, there is no escape from the conclusion that it was intended to cover all losses to the trust estate resulting from the unfaithful discharge of duty by the principal in his fiduciary relation, and of his failure to account for all assets in his hands at the time of the execution of the bond or which came into his hands afterward. No other conclusion can be reached without disregarding the application upon which the contract of suretyship is based and which must be read in connection with the bond in order to properly understand and interpret its meaning. In paragraph five of the application, the bond required was stated to be one in a penal sum of $15,000, which was to secure the principal sum of $12,000, being the amount of the entire trust estate. In paragraph twelve, the estate is described as all that trust estate which came "into my hands in cash from a former trustee, under the will of Daniel B. Hinman, deceased." All the

cash which did come into his hands as trustee under the will mentioned, was represented by the securities and investments, a list of which was shown appellant before the execution of the bond, and the amount of the liability was fixed to cover the entire estate consisting of these securities, the value of which either was known or should have been known by the bonding company when, for a consideration, it assumed the burden of answering to the cestuis que trustent for the faithful performance of duty by the trustee and the accounting for all assets belonging to the trust estate. In paragraph six, the nature of the bond is stated to be to secure the parties in interest, the cestuis que trustent here, the proper application of the principal and interest of the trust estate created by the will of the testator above mentioned. Under these circumstances, how can there be any doubt as to the nature of the obligation or the extent of the liability the bonding company voluntarily took upon itself. When the new bond was given and approved, the entire assets of the trust estate had already been received by the trustee and were represented by the securities and investments on hand at that time and about which appellant was informed prior to its becoming a surety. No default had then been declared, and neither the trustee nor the cestui que trust, nor the surety, was in position to say that there was an existing default. These securities may or may not have been good at that time. If they should subsequently be realized on, there would be no default; if not realized on in full, there might or might not be a default depending upon the gross negligence of the trustee. The entire trust estate was intact in the hands of the trustee to the extent of the securities held by him and exhibited to the bonding company when the new bond was taken. The most that can be said of the situation at that time is that the value of the securities may not have been known or ascertained. The moneys of the trust estate were invested in western mortgages under an agreement that the trustee was not liable for losses unless for gross negligence, and of course his surety had no greater burden than the principal. It could be held liable for losses on these investments only upon the ground of the gross negligence of the trustee.

The question of gross negligence was raised and determined when the trustee filed his account in the orphans' court. The attempt was there made, and successfully made, to surcharge the accountant upon the ground of gross negligence which was the only ground upon which a surcharge could be made under the agreement: The account was first referred to an auditor who took the testimony which was afterward fully considered by the court with the result that the charge of negligence was sustained and the accountant surcharged accordingly. From the order or decree surcharging the accountant and fixing the amount of his liability as trustee, no appeal was taken, and now after the lapse of four years, we think the question of gross negligence cannot be opened up in a collateral proceeding. The trustee is bound by the decree of the orphans' court, unappealed from, and why should not his surety be likewise bound? As to official bonds, bonds of indemnity, and bonds to insure the faithful performance of duty and to secure a proper accounting by persons in fiduciary relations, the rule of our cases seems to be that a judgment against the principal is conclusive against his sureties as to his misconduct and failure to properly account. In this class of cases, the surety submits himself to the acts of his principal and to the judgment as a legal consequence, following the scope of the suretyship: Masser v. Strickland, 17 S. & W. 354; Giltinan v. Strong, 64 Pa. 242; Commonwealth v. Gracey, 96 Pa. 70. To permit appellant to raise the question of the gross negligence of the trustee already determined in the orphans' court against the principal, in this collateral action, as a defense to the bond in suit, the rule of these cases must be disregarded.

Again, there is no distinction in principle between the case at bar and Commonwealth v. Cox, 36 Pa. 442, in which it was held that where a guardian was required to give additional security, the sureties on the second bond are equally bound with those on the first bond for the full performance of the duties of the guardianship trust by their principal.

Judgment affirmed.