## Tarentum Realty Company *v.* McClure et al. Appellant.

*Contract—Bond—Conditions—Notice—Waiver—Principal and agent.*

1. In an action against a surety on a bond taken to insure the performance of a building contract, the defense was that the obligee, disregarding the conditions of the bond, had neglected to give the surety, notice of the contractor's default in not finishing the building at the time specified, and had not retained the agreed percentage of the contract price. The bond was executed only seven days before the time originally agreed upon for the completion of the building, and was conditioned for one year, and there was evidence of a subsequent course of dealing showing that neither party insisted upon completion at the time specified. There was other evidence that the surety had advised the use of the retained percentage for the settlement of unpaid bills to avoid threatened liens, and that such payment was made with the knowledge and consent of an alleged agent of the company. *Held*, that the question of the surety's liability was properly for the jury.

2. Bonds are presumptively intended to secure losses sustained after

and not before their execution, but such presumption may be overcome if the facts show that past as well as future defaults were intended to be covered by the bond.

Argued Oct. 31, 1910. Appeal, No. 184, Oct. T., 1910, by American Surety Company, defendant, from judgment of C. P. No. 2, Allegheny Co., July T., 1906, No. 33, on verdict for plaintiff in case of Tarentum Realty Company *v.* Frank P. McClure and the American Surety Company of New York. Before BROWN, MESTREZAT, POTTER, EL-KIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Suit on a bond taken to insure the performance of a building contract. Before FRAZER, P. J.

The opinion of the Supreme Court states the facts.

The defendant asked the court to charge as follows:

1. Under all the evidence the verdict should be for this defendant. *Answer:* Refused. [3]

2. If the jury believe that no extension was granted on the time of completion of the Tarentum Opera House beyond the time set in the contract, to wit: October 16, 1905, failure to complete the building at such time was a default within the terms of the clause of the bond providing for notice to surety. *Answer:* Refused. [4]

3. Continual failure on the part of the contractor to pay the bills of subcontractor and materialmen constituted a default within the terms of the bond upon which this suit is brought, and if the obligee had notice of the default a failure to notify the surety as provided by the terms of the bond discharges the surety. *Answer:* Refused. [5]

*Errors assigned* among others were (3–5), answers to defendant's points as above.

Verdict and judgment for plaintiff for $7,851.51. Defendant appealed.

*E. W. Arthur,* with him *J. M. Magee* and *W. S. Thomas,* for appellant.—Failure to notify the surety company

immediately of the contractor's default was a clear breach of the covenants of the bond: National Surety Co. v. Long, 125 Fed. Repr. 887; Robbins v. Robinson, 176 Pa. 341; Lancaster v. Barrett, 1 Pa. Superior Ct. 9; Bensinger v. Wren, 100 Pa. 500; Bauschard Co. v. Fidelity & Casualty Co. of N. Y., 21 Pa. Superior Ct. 370.

*John S. Ferguson,* with him *J. Frank Peffer,* for appellee.

OPINION BY MR. JUSTICE ELKIN, January 3, 1911:

This is a suit on a bond taken to ensure the performance of a building contract. The defense is that the obligee disregarded certain conditions of the bond requiring notice of defaults and the holding of retained percentage. The principal default relied on, notice of which was not given within thirty days, was the failure to complete the building at the time specified in the contract. This needs an explanation. The building contract was between McClure, one of the appellants, and the Tarentum Realty Company, the appellee. It was dated July 1, 1905, and provided for the completion of the building on or before October 16, of the same year. Subsequently this contract, presumably with the consent of all interested parties, was assigned to the Wilson Construction Company. No bond was given for several months after the original contract was entered into and when the bond was given it contained a recital of the assignment of the building contract to the company above indicated and recognized that company as being obliged to perform its covenants. When the bond was executed on October 9 only seven days remained in which to complete the building according to the terms of the contract. In the very next paragraph after the one providing for notice of defaults it is provided that no suit or action shall be instituted against the principal or surety by reason of any such default after October 9, 1906, which was exactly one year from the date of the execution of the bond. Here then

was a bond, executed seven days before the date fixed by the contract for the completion of the building, containing a provision that defaults occurring any time within the year following its execution should be considered as within the contractual obligations of the obligors. Surely this can only mean the parties knew and had in contemplation at the time the bond was executed that the building could not be completed in the seven days remaining in which to complete according to the contract, and that additional time would be required to fully perform the same. If this were not the situation in the contemplation of the parties these clauses are meaningless under the facts of this case. Then, too, the course of dealing between the parties subsequent to the execution of the bond shows that the completion of the building on the day specified was not contemplated nor insisted upon by either the obligee or obligors. They all treated that provision as waived. It is further contended that there were other defaults by the contractor of frequent occurrence during a period of several months after the execution of the bond of which appellants should have been notified and that failure to give the thirty days' notice as required relieves the surety from its obligation to indemnify. This contention is based upon the assumption that failure of the contractor to pay for labor and materials and his delinquency in prosecuting the work amounted to a default within the meaning of the bond, of which notice should have been given the obligors. The bond does not define what is meant by a default and the evidence gives but little light on the question. There was some delay in completing the building, but treating the duty to complete at the time specified in the contract as waived, no definite time was fixed for the completion, and this is true as to the payment of bills by the contractor. In view of these facts the instructions to the jury by the learned court below are not objectionable. There was no error in this respect. The same may be said as to the covenant requiring fifteen per cent of the contract

price to be retained.  The bond was given seven days before the date fixed by the contract for the completion of the building.  The general rule is that bonds are presumptively intended to secure losses sustained after and not before their execution. . This, however, is only a presumption which may be overcome if the facts show that past as well as future defaults were intended to be covered by the bond: Com. v. Fidelity & Deposit Co., 224 Pa. 95.  In the present case there is nothing in the record to disclose such an intention and the presumption therefore is that the bond was intended to cover future defaults.  The evidence does not show how near completion the building was when the bond was executed, nor what was the situation as to the retained percentage at that time, or whether there had been any default prior to that date.  Presumably the surety company after investigation of the existing conditions took upon itself the obligation of suretyship for such defaults as might subsequently occur.  The retained percentage was intended as a means to compel complete performance and as a protection against claims or 'liens that might be made or filed.  Evidently on account of the uncertain conditions existing at the time the bond was executed and by reason of what subsequently occurred all parties adopted a course of dealing as the best means of safeguarding their interests.  Bills had accumulated and demands for payment were insisted upon.  The contractor either would not or could not pay.  Liens were threatened and the situation demanded some kind of action.  The surety company was notified of this situation.  At this juncture the witness, Beatty, appeared on the scene and proceeded to investigate conditions.  He came as the representative of those responsible for the bond.  There is a dispute as to whom he represented, but this question was left to the jury and under all the circumstances, properly so.  His testimony was that he represented the bond but not the surety.  This is an anomalous position to say the least, but in the light of what he did while on

the ground and in view of the correspondence with the surety company relating to his presence and the conditions discovered by him and reported either by himself or others, we think the trial judge was warranted in submitting the question of his authority to the jury. At the time Beatty came upon the ground the appellee had in its hands the fifteen per cent required to be held. All payments made while Beatty was there were with his knowledge and consent. Then there was the letter from the counsel and an officer of the surety company directing appellee to either hold the retained percentage as a protection against unpaid bills or to pay the bills out of the fund so retained. This advice was followed. Under all of these circumstances it was for the jury to say whether the appellee was warranted in paying the bills out of the retained percentage. The charge of the learned trial judge presented the whole case in an intelligent and impartial manner and the weight of the evidence was for the jury.

Judgment affirmed.