Commonwealth *v.* Ramsey (et al., Appellant).

Argued January 8, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*E. Wallace Chadwick,* with him *Drinker, Biddle & Reath,* for appellant.

*Albert J. Williams,* for appellee.

OPINION BY MR. JUSTICE DREW, March 19, 1934:

For a number of years prior to 1931, William T. Ramsey was collector of state and county taxes in the City of Chester, Delaware County. He was reappointed for that year, and on September 22, 1931, gave bond for the faithful performance of his duties, with the American Surety Company of New York as surety. On May 20, 1932, by virtue of a warrant of attorney contained in the bond, judgment was confessed thereon for the penal sum of $204,380.23, against Ramsey and the surety company. On petition of the surety a rule was granted to show cause why the assessment of damages should not be vacated and the judgment opened. The county commissioners filed an answer, and, after hearing the evidence on both sides, the court below entered an order discharging the rule. From that order the surety took this appeal.

Two questions are raised for our decision: (1) Did the surety produce evidence sufficient to require the opening of the judgment and the submission of the case to a jury? (2) Does the bond in controversy cover sums collected by Ramsey before its execution, on duplicates theretofore delivered to him?

The surety produced evidence that when Ramsey requested it to become surety on his bond for 1931 it demanded that he first procure a certificate of the county

treasurer that he had settled in full for his 1930 taxes; that he requested such a certificate from the treasurer, telling him the purpose for which he desired it and representing to him that he had turned in to the county commissioners claims for exemptions and exonerations sufficient to cover the amount appearing to be due by him on the treasurer's books; that the treasurer then went to the office of the commissioners and asked one of them privately if this was true and was informed that "the papers were in the office" at the time and that it was "all right"; that the treasurer thereupon instructed his deputy to issue the certificate requested by Ramsey, which was done; and that the certificate was false, in that, as shown by the treasurer's books, approximately $60,000 was then outstanding on Ramsey's duplicate for 1930, of which sum $29,000 remained unpaid after the allowance of all exemptions, exonerations, and other credits, and was in fact never settled for, having been embezzled by Ramsey. It may be conceded that there is sufficient evidence to justify a finding that the bond was executed by the surety in reliance upon the certificate.

The surety contends that this evidence is sufficient to establish a defense to the bond. The case of Com. v. Am. Bonding & Trust Co., 205 Pa. 372, is decisive that it is not. In that case a surety company, before consenting to become surety on the official bond of a township tax collector, wrote to the county treasurer, asking whether there was any shortage due by the collector for previous years and whether he had ever been short in his accounts. The treasurer, by his counsel, answered in the negative, although the fact was that the collector had defaulted in every year he had held the office. We held that these facts constituted no defense to an action on the bond, stating: "Any third person desiring information can examine the accounts himself or employ an agent or attorney to do so and report to him. There is no official duty on the treasurer to examine and make such report; if he do so at the request of a third person, he becomes the

mere agent of that person, to do what he is not officially obliged to do, and whether he performs the act well or ill it is something with which the public has no concern and is in no way responsible. ...... We are of opinion the surety company had no legal right to ask these questions and when it did there was no official duty on the part of the officer to answer them; when he chose to do so, he was the mere agent of the company just as any other person would have been of whom it might have made the same request."

In Bower v. Washington Co., 25 Pa. 69, which in its principal features was much like this case, the county commissioners, in their required annual publication of receipts and expenditures of the county, had stated that the tax collector had settled in full for his duplicate for the previous year, when in fact he was a defaulter to a considerable amount. It was shown that the sureties had seen this statement of the commissioners before they went upon the collector's bond, and there was a strong inference that they had thereby been induced to become sureties. He again defaulted, and the commissioners attempted to collect from the sureties. They sought relief because of the false statement of the commissioners. This court held that the statement by the officers did not bind the county.

It is true that in Com. v. Am. Bonding & Trust Co., supra, Mr. Justice DEAN, the writer of the opinion, by way of dictum said: "If the surety company had called upon the treasurer for a certificate from the official accounts which he was bound to correctly keep, of the balances against [the tax collector] for the years 1894, 1895, 1896, and 1897, and he had as a treasurer furnished a false statement, it might be the county would be answerable for the misstatement, because it would have had many of the marks of an official act which perhaps it would have been his duty as an officer to perform." It is argued that such is the situation in the instant case. No such question arose in the case cited, as was explicitly

pointed out in the opinion, nor does such a question arise here. Even if the expression were sound, and we are satisfied it is not, it could have no application here, for the statement by the treasurer in the instant case is no more a statement of the kind described by Mr. Justice DEAN than was the statement by the treasurer in the case before him. Neither in form nor in substance is it such. As the company had no legal right to ask for such information, and there was no public duty on the treasurer to furnish it, when he did so he did not act in an official capacity, but solely as the agent of the company. His books were open to the public, and the same information could have been secured, and, as it turned out, in a much more accurate form, by any other agent of the company—its attorney, for instance. Under such circumstances, the public cannot be held responsible for the error or fraud of the official.

The surety further argues that the evidence is sufficient to warrant a finding that there was a conspiracy between the county treasurer and the county commissioners to induce it to become surety for Ramsey by means of false representations, in order that his defalcations might be covered up, or discovery postponed, and that for this reason the judgment should be opened. There is, however, nothing in the record which indicates, even remotely, that more than one of the three commissioners had any knowledge of the matter. There is no testimony whatever from which it can be inferred that any of the commissioners were implicated in Ramsey's defalcations, that they were interested in covering them up, or even that they knew about them. Furthermore, we are unable to see how the existence of such a conspiracy would be material, even if true. The reason of the rule denying liability of the county for false or mistaken representations of the treasurer, relied upon by the surety, applies with equal force to such representations made by the county commissioners. There can be no sound distinction in this respect between the two

classes of officers. And if the county would not be bound by the representations of either, made to induce the surety to become such, it cannot logically be held that it is liable for representations made by them jointly, or made by one and concurred in by the other.

In support of its contention that there is no liability on the bond for sums collected by Ramsey before its execution, the surety relies upon the admitted fact that nine of the twelve books of the duplicate were delivered to him and more than $185,000 collected thereon before the bond was executed. The condition of the bond is as follows: "If the above bounden William T. Ramsey, who has been elected collector of County, State, Poor and Special Poor Taxes for the City of Chester in the County of Delaware and State of Pennsylvania, shall well and truly collect and pay over or account for according to law, the whole amount of Taxes charged or assessed in the duplicate which shall be delivered to him as such Collector, without any fraud or further delay, then this obligation to be void, otherwise to remain in full force and virtue." It is true, as the surety argues, that bonds are presumptively prospective, covering only transactions occurring after the date of their execution (Tarentum Realty Co. v. McClure, 230 Pa. 266; see Com. v. Fidelity & Dep. Co., 224 Pa. 95; Mt. Lebanon Twp. v. Metropolitan Cas. Ins. Co., 106 Pa. Superior Ct. 209), but it is also true that where a contrary intention appears from the surrounding circumstances and the purpose for which the bond was executed, this intention will be given effect: Com. v. Fidelity & Dep. Co., supra; see Mt. Lebanon Twp. v. Metropolitan Cas. Ins. Co., supra. In the instant case such an intention is manifest from the admitted facts surrounding the transaction. The bond was a renewal of Ramsey's bond for 1930, on which the same company was surety. In the application and premium notice, the execution of which is admitted, though their relevancy is questioned, the effective date was stated to be July 2, 1931, the expiration date of the

514

bond for the previous year. The bond was clearly meant to cover the entire duplicate for 1931, thus continuing the protection of the public for all collections made by Ramsey from the expiration of the bond of the previous year. There can be no doubt that such was the intention of the parties at the time of the execution of this bond. In preparing the bond a printed form was employed. The words "which shall be delivered" were used in the printed form simply because, in the usual situation, the bond is executed before the collector's books are delivered; they were obviously allowed to remain in this bond merely by inadvertence, because it clearly was not the intention of the parties to limit the surety's liability to those books which had not been delivered at the time the bond was executed. If the contrary were true, there could be no liability at all on nine books of the duplicate, even as to sums collected on them after the filing of the bond. This could never have been intended; there can be no doubt that the bond was meant to cover the entire duplicate for 1931, without reference to the time the individual books were delivered. This being true, a failure to pay over sums collected before the execution of the bond would be an obvious breach of Ramsey's obligation to *"pay over* or account for" the whole amount of his duplicate. We think the court below acted properly in holding that the bond extended to sums collected by Ramsey before the date of its execution, and for the simple reason that in the execution of the bond the intention of the parties is clear and manifest to insure performance of Ramsey's obligation to "collect and pay over or account for" the entire duplicate for 1931.

The order of the court below is affirmed at appellant's cost.