## Pennsylvania Turnpike Commission, Appellant, *v.* United States Fidelity and Guaranty Company.

Argued June 4, 1963. Before Bell, C. J., Musman-no, Eagen, O'Brien and Roberts, JJ.

*Harold E. Kohn,* with him *Henry E. Harner, Aaron M. Fine,* and *Dilworth, Paxson, Kalish, Kohn & Dilks,* for Pennsylvania Turnpike Commission, appellant.

*Edward E. Knauss, III,* and *Gilbert J. Helwig,* with them *F. Brewster Wickersham, Elder W. Marshall,* and *Metzger, Wickersham & Knauss,* and *Reed, Smith, Shaw & McClay,* for appellees.

OPINION BY MR. JUSTICE EAGEN, October 11, 1963:

This is an appeal in an action of assumpsit from the order of the lower court refusing plaintiff's motion for judgment on the pleadings. The appeal is prosecuted pursuant to the provisions of the Act of April 18, 1874, P. L. 64, §1, 12 P.S. §1097.

James F. Torrance was a member of the Pennsylvania Turnpike Commission and also secretary-treasurer of the commission on February 28, 1955, when it entered into a multimillion dollar engineering contract with the Manu-Mine Research and Development Company. Torrance and others were subsequently indicted, tried and convicted for conspiracy to defraud the commission and for misbehavior in office in activities relating to the consummation and performance of the contract. These convictions were sustained by the appellate courts of the Commonwealth, with the exception of one count contained in the three count misbehavior in office indictment.[1]

Pursuant to statutory requirements,[2] Torrance executed a $50,000 official bond in his capacity as a member of the commission, and a $100,000 bond as secretary-treasurer of the commission, for the period August 14, 1954, to August 14, 1955. Identical bonds were executed for the period August 14, 1955, to August 14, 1956. In each of the foregoing bonds, the United States Fidelity and Guaranty Company (Fidelity) was surety and bound itself unto the commis-

---

[1] *Commonwealth v. Evans,* 190 Pa. Superior Ct. 179, 154 A. 2d 57 (1959), affirmed per curiam 399 Pa. 387, 160 A. 2d 407 (1960).

[2] Act of August 14, 1951, P. L. 1232 §5, 36 P.S. §659.5.

sion in varying penal sums. The pertinent provisions of each bond included the condition, "That if the said James F. Torrance . . ., shall well and truly, correctly and faithfully in all things, execute, perform and discharge, the trusts and duties of the said office or employment enjoined and required by law, or the terms of this employment, . . ., and shall well and truly correctly and faithfully account for and pay according to law, all moneys which shall be received by him as such officer, or employe . . . then this obligation to be void . . . ."

This action of assumpsit was instituted by the commission against Torrance and Fidelity to recover the penal sum on all four bonds, totalling $300,000. The complaint alleges that Torrance did not satisfy the conditions of the bonds in that he participated in a conspiracy to defraud the commission and was also guilty of misbehavior in office during the periods of coverage, which resulted in loss to the commission in an amount in excess of the bonded amount. The record of the criminal proceedings was incorporated by reference. It was further alleged that the judgments of conviction entered against Torrance were conclusive as to the defendant's liability for the full face amount of the bonds.

In their answers to the complaint, Torrance and Fidelity specifically denied the existence of the conspiracy to defraud, and misbehavior in office, and that the former had breached the conditions of the bonds; also that the conviction of Torrance was conclusive of their liability. Fidelity further raised the defense of timely notice and the statute of limitations.[3]

Plaintiff moved for judgment on the pleadings which the lower court denied. Plaintiff appeals.

---

[3] The last mentioned defense was not pressed in the court below.

The question immediately arises: Has the plaintiff the right to appeal at this stage of the proceedings?

While an order of a lower court denying a motion by a plaintiff for judgment on the pleadings is interlocutory in nature, under the Act of 1874, supra, an appeal does lie from such an order in an action of assumpsit: *Ross v. Metropolitan Life Ins. Co.*, 403 Pa. 135, 169 A. 2d 74 (1961); *Reading Co. v. Willow Dev. Co., Inc.*, 407 Pa. 469, 181 A. 2d 288 (1962). However, for the statute to apply, it must be a case wherein if the motion is granted, the litigation will be terminated and at an end: *Epstein v. Kramer*, 374 Pa. 112, 96 A. 2d 912 (1953). This is not so in the present instance. In no event can a final judgment be entered against Fidelity on the present state of the record. The issue of timely notice, admittedly factual, must necessarily be resolved below. Moreover, neither can a final judgment be now entered against Torrance, as our discussion of the legal questions involved will presently indicate.

The lower court made the following conclusions: (1) That the criminal judgments of conviction were prima facie evidence only of the defendant's liability on the bonds involved; (2) That the bonds were penal or forfeiture in nature; (3) That if the criminal judgments were conclusive of a breach of the bonds, it could only be as to the bond which Torrance executed as commissioner for the period of August 14, 1954, to August 14, 1955.

## Import of the Criminal Judgments

The rule in most jurisdictions is that a judgment entered in a criminal case is not proof of anything in a subsequent civil action growing out of the same facts, except the fact of its rendition. See 50 C.J.S., Judgments §754; 30A Am. Jur., Judgments, §472, and 2

Freeman, Judgments, §653 (5th ed. 1925). The rule is a carry over from the early days of the common law. See 18 A.L.R. 2d 1287. With the lapse of time, it has been recognized that the reasons for the rule are weak and outdated. A growing minority would admit the criminal record as evidence of the facts determined in the criminal proceeding unless it is excluded by statute. See, Developments in the Law Res Judicata, 65 Harv. L. Rev. 818 (1952); *Schindler v. Royal Ins. Co.,* 258 N.Y. 310, 179 N.E. 711 (1932), and 18 A.L.R. 2d 1287 and 1289. The federal courts have now adopted a progressive view and hold that the issues essential to a guilty verdict must be regarded as having been determined by the judgment. See, *Local 167, I. B. of Teamsters v. United States,* 291 U.S. 293 (1934); *United States v. Gramling,* 180 F. 2d 498 (5th Cir. 1950); *United States v. Salvatore,* 140 F. Supp. 470 (1956); *United States v. Doman,* 255 F. 2d 865 (3rd Cir. 1958), aff'd 359 U.S. 309 (1959).

In the case of a judgment of acquittal or nolle prosequi, Pennsylvania has consistently followed the rule that the criminal judgment is not admissible as evidence to prove that the defendant did not do the act complained of: *Commonwealth v. Funk,* 323 Pa. 390, 186 Atl. 65 (1936); *Wilson v. Wilson,* 100 Pa. Superior Ct. 451 (1931); *Bobereski v. Ins. Co. of Pa.,* 105 Pa. Superior Ct. 585, 161 Atl. 412 (1932). It has likewise been held that in a civil action to recover damages for an assault and battery, the record of the defendant's conviction in a criminal court of the assault and battery is not admissible: *Nowak v. Orange,* 349 Pa. 217, 36 A. 2d 781 (1944); *Zubrod v. Kuhn,* 357 Pa. 200, 53 A. 2d 604 (1947). However, in *Mineo v. Eureka Sec. F. & M. Ins. Co.,* 182 Pa. Superior Ct. 75, 125 A. 2d 612 (1956), it was held that the named insured in a fire insurance policy or his assignee was conclusively barred from recovery on the policy by the conviction

of the insured on the charge of arson. Also, it has been held that a person convicted of murder cannot take as beneficiary under an insurance contract on the life of the victim. See, *Greifer's Estate,* 333 Pa. 278, 5 A. 2d 118 (1939). Of course, it must be recognized that *Mineo* and *Greifer's* involved a question of public policy and an attempt to take advantage of a right arising from the crime itself.

In view of the substantial difference in the quantum of proof required in civil and criminal cases, the rule of exclusion in cases wherein a judgment of acquittal is entered is rational and well grounded. However, there are exceptions. (See, V Wigmore, Evidence, §1671, 3d ed. 1940.)

The question of the involvement of Torrance, the principal on the bonds, in a conspiracy to defraud and misbehavior in office, was thoroughly explored in a long and well conducted trial. The convictions which followed necessarily established that Torrance participated in a conspiracy to defraud the commission, and that he wilfully permitted payment of vast sums of money to Manu-Mine to which it was not entitled.

It was abundantly established that Torrance's acts constituted a breach of the conditions of the bond. In view of the particular circumstances in this case and the detailed evidence adduced in the trial on the very conditions involved in the bond, it would be an act of supererogation to re-try the question of the activities which spelled out the breach of the bond. For the purpose of this present case, we therefore conclude, that the breach of the conditions of the bonds has been established.

Fidelity's argument that it was not a party to the criminal proceeding and has not had its day in court fails because, as already indicated, the very circumstances which went into the scope of the bonds were exhaustively and conclusively litigated. The surety is

bound by the determination of the principal's liability. See, *Commonwealth v. Fidelity & Deposit Co.*, 224 Pa. 95, 73 Atl. 327 (1909); *Commonwealth v. Turner*, 340 Pa. 468, 17 A. 2d 352 (1941). We see no substantial reason why this rule should not be applied herein. Fidelity submitted itself to the acts of Torrance and the criminal judgments follow the scope of the suretyship. It must be noted that fraud, collusion or mistake are not pleaded. See 43 Am. Jur., Public Officers, §453. If Torrance has no defense as to the issue of breach, then no such defense is open to his surety.

Nor does the fact that the commission was not a party to the criminal proceeding preclude the application of the doctrine of collateral estoppel. The commission is an instrumentality of the Commonwealth: *Rader v. Pa. Turnpike Commission*, 407 Pa. 609, 182 A. 2d 199 (1962). This is sufficient nexus to justify the application of the rule.

Fidelity further asserts that the criminal judgments do not or did not establish: (1) That there had been any breach of either of the two bonds covering the individual defendant in the capacity of secretary-treasurer of the commission; (2) That any breach had occurred in the period after August 15, 1955, to which the second set of bonds relate.

The conspiracy indictment charged that the conspiracy was pursued on February 28, 1955, and "divers and other dates prior thereto" and the misbehavior indictment charged that the misbehavior occurred on February 28, 1955, and "divers other times prior to and subsequent to that date." The evidence disclosed that Torrance authorized the issuance of the first check to Manu-Mine on May 19, 1955, and a last check on January 20, 1956. When a conspiracy is shown, the acts of any conspirator done in its prosecution and furtherance are admissible against any or all of the conspirators: *Commonwealth v. Rhey*, 140 Pa. Supe-

rior Ct. 340, 14 A. 2d 192 (1940). Herein each payment made under the contract must be considered part of the conspiracy. Since payments were made under the contract during the period covered by each of the bonds, the conspiracy conviction is evidence of a violation of the condition of each bond.

The contention that the conviction does not extend to Torrance in his capacity as secretary-treasurer of the Pennsylvania Turnpike Commission is also without merit. In his capacity as secretary-treasurer, Torrance signed checks under the contract for enormous amounts of money. These payments, as previously indicated, were part and parcel of the conspiracy, and were made during the periods covered by the bonds executed to cover Torrance in his capacity as secretary-treasurer. The conspiracy indictment was brought against Torrance, both as secretary-treasurer and a member of the commission. The conviction on this indictment is, therefore, evidence applicable to Torrance in both capacities.

## Nature of the Bonds

It is our conclusion that the bonds were indemnifying, rather than penal or forfeiture bonds.

Each instrument contained the following provision: "*Notice of loss* must be given to the Surety's home office promptly not exceeding thirty (30) days after discovery thereof." (Emphasis supplied). This, in itself, indicates that the parties themselves contemplated that they were not forfeiture bonds, but rather indemnity in nature to secure the commission for any loss which might occur through a breach of the conditions. Any other conclusion would be unrealistic and illogical. Certainly, the parties never intended that if Torrance were guilty of some minor misconduct in office with little or no resulting loss to the commission, that the surety would be penalized for the full amount of the

face of the bonds. In the absence of statutory provisions to the contrary, the intention of the parties as garnered from the contents of the contract is the determinative factor. See, *March v. Allabough,* 103 Pa. 335 (1883). The majority of decisions on this question uniformly hold that the liability of a surety on an official bond is limited to actual damages sustained. 64 A.L.R. 934; Note 4 A.L.R. 2d 1348; *City of Springfield v. Brown,* 365 Mo. 854, 289 S.W. 2d 48 (1956), and *State ex rel. Switzer v. Overturff,* 239 Iowa 1039, 33 N.W. 2d 405 (1948). See also, Restatement, Security, §181.

There is nothing in the Act of 1951, P. L. 1232, 36 P.S. §659.5 under which the bonds involved were required to indicate that they were to be penal in nature, other than the words "penalty of fifty thousand dollars ($50,000)" and "penalty of one hundred thousand dollars ($100,000)." The words "penalty" or "penal sum" have various meanings when used in different areas of the law: *State ex rel. Switzer v. Overturff,* supra. However, when used in connection with bonds, it has been construed to connote merely security for damage actually caused by the breach of the condition with recovery thereon limited to an amount necessary to *compensate* for losses sustained, unless liquidated or lump sum damages are clearly intended by the agreement. *United States v. United States Fidelity and Guar. Co.,* D.C. E.D. Pa., 35 F. Supp. 959 (1940) ; *Illinois Surety Co. v. United States,* 229 Fed. 527 (2d Cir. 1916). It is noted also that the Act of June 14, 1836, P. L. 637, 8 P.S. §§111-124,[4] which governs the procedure for recovery on bonds given the Commonwealth does clearly indicate that such are indemnifying instruments.

---

[4] This statute does not apply herein since these bonds were given to the Turnpike Commission rather than to the Commonwealth.

Therefore, the time and extent of the loss must be established before a final judgment may be rendered against either defendant.

Are the bonds cumulative?

The Turnpike Act of 1951, supra, mandates that each commissioner shall execute a bond in the sum of $50,000 and that the secretary-treasurer shall execute a bond in the sum of $100,000. In the instant case, bonds were executed in the statutorily required amount for each year involved. In short, more was done than the statute required. One bond covering the period of tenure would have sufficed.

However, the bonds were executed voluntarily and it is assumed separate fees collected by the surety. If a bond is given for a lawful purpose, although not legally required, it is binding: *Clement v. Courtright,* 9 Pa. Superior Ct. 45 (1898). Absent statutory restrictions, if a surety assumes a liability in a greater sum than required, he may be held to his undertaking. See, Restatement, Security, §169 and comment. See also, *Commonwealth v. Wistar,* 142 Pa. 373, 21 A. 871 (1891). We read no such restriction in the statute.

Appeal quashed. Costs to abide the result.

Mr. Justice COHEN took no part in the consideration or decision of this case.

