**James S. BALTER et al., Plaintiffs,**

**v.**

**The BATO COMPANY, INC., a corporation, Defendant.**

**Civ. A. No. 74–206.**

United States District Court,
W. D. Pennsylvania.

Sept. 6, 1974.

As Amended Jan. 20 and Feb. 6, 1975.

---

Robert Engel, Foster S. Goldman, Jr., Pittsburgh, Pa., for plaintiff.

Sanford M. Lampl, Pittsburgh, Pa., for defendant.

## OPINION

ROSENBERG, District Judge.

The plaintiffs, James S. Balter, Beatrice S. Balter and Mellon Bank, N.A., Executors of the Estate of Morris Balter, deceased, issued an attachment through this court on the garnishees, PPG Industries, Inc. and ASG Industries, Inc. under the Pennsylvania Foreign Attachment law, Rule 1251 of the Pennsylvania Rules of Civil Procedure, 12 P.S. Appendix. The garnishments were based upon an alleged contract between the deceased, Morris Balter and the defendant, which the plaintiffs in their action in this court say has not been honored by the defendant.

The defendant, The Bato Company, Inc., filed a motion to dissolve the attachments pending disposition and to fix bond pursuant to Pennsylvania Rule of Civil Procedure 1272. Briefs were submitted and hearing had on that motion.

Counsel for the defendant argues that the foreign attachment procedure provided by the Pennsylvania Rules of Civil Procedure is lacking in due process and is thus unconstitutional under the Fourteenth Amendment. In support of his contention the defendant points to the recent Supreme Court cases of Sniadach v. Family Finance Corporation, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) and Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Though admitting that neither of those cases dealt directly with the foreign attachment statutes, the defendant emphasizes that both cases annulled similar statutes in which the opportunity for hearing before garnishment was not required. The defendant further states that the purpose of the foreign attach-

ment statute is primarily to obtain jurisdiction of a foreign defendant. Since the defendant has filed a general appearance in the instant case, it argues there is no need to continue the attachment.

■ In contrast to the defendant's urgings, the law concerning the foreign attachment statute is clear both in the United States Supreme Court and the Third Circuit. In Ownbey v. Morgan, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921), the Supreme Court specifically ruled constitutional the Delaware foreign attachment rule. In so ruling the Court per Justice Pitney analyzed the history of the foreign attachment statutes in general and concluded (at pages 110–111, 41 S.Ct. at page 438):

> "The due process clause does not impose upon the states a duty to establish ideal systems for the administration of justice, with every modern improvement and with provision against every possible hardship that may befall. It restrains state action, whether legislative, executive, or judicial, within the bounds that are consistent with the fundamentals of individual liberty and private property, including the right to be heard where liberty or property is at stake in judicial proceedings. But a property owner who absents himself from the territorial jurisdiction of a state, leaving his property within it, must be deemed *ex necessitate* to consent that the state may subject such property to judicial process to answer demands made against him in his absence, according to any practicable method that reasonably may be adopted."

In Lebowitz v. Forbes Leasing and Finance Corporation, 456 F.2d 979, C.A. 3, 1972, the Third Circuit, citing *Ownbey,* specifically unheld the constitutionality of Pennsylvania foreign attachment procedure. Although the Court's opinion was prior to that of *Fuentes,* supra, it would postdate the *Sniadach* opinion, supra. In differentiating the *Sniadach* rationale, Judge Seitz stated (at page 981):

> "Thus, our principal concern is whether the attachment procedures being challenged critically impair the resolution of disputes without serving to preserve any compensating governmental interest. The Court in Sniadach faced such a situation. There the seizure of Mrs. Sniadach's wages prior to any hearing on the merits of the plaintiff's claim tended to reverse the usual litigating postures of the parties. Ordinarily the plaintiff bears the burden of bringing suit and proving his claim. But Sniadach involved a situation where the defendant, as a result of the wage seizure, found herself deprived of her only means of support and, in effect, unable to avoid settlement and await the opportunity to present her defense in an adversary proceeding."

Judge Seitz further noted (at page 981):

> "It is quite apparent that notice as a pre-condition to an attachment might well defeat the primary purpose behind an attachment, i. e., to compel an appearance. Obviously, if the property could be removed before the attachment became effective there would be no compulsion to appear. The absence of any requirement of an affidavit of meritorious action is not a deficiency of constitutional proportions. Indeed, the complaint here was verified. Likewise, while the intervention of a judicial officer prior to attachment might be desirable, we do not agree that the absence of such intervention renders process by attachment unconstitutional. Nor do we believe that the absence of a pre-attachment bond requirement, though such a requirement might be desirable, is contrary to due process requirements. None of these alleged deficiencies critically impair the efficiency of the adversary system. Thus, in our view, Sniadach does not require a general holding that the Pennsylvania foreign attachment procedures are unconstitutional."

■■ In regard to defendant's contention that a general appearance abol-

ishes the need for the continuance of the garnishment, it must be noted that the purpose of the foreign attachment statute is two-fold in nature. In addition to the goal of obtaining jurisdiction of an out-of-state defendant, the statute also ensures, until the entrance of suitable bond, a fund or res from which the plaintiff is insured satisfaction at least to some extent of any judgment he may obtain.

As stated in Property Research Finance Corporation v. Superior Court, 23 Cal.App.3d 413, 100 Cal.Rptr. 233, at page 237 (1972):

"The increased mobility of persons and property across state lines has transformed what was originally an incidental benefit of attachment into what the *Ownbey* Court implied has now become its primary purpose—to insure the collectability of plaintiff's judgment. In our view the benefit to creditors from the use of foreign attachment is very great while the detriment to nonresident debtors remains relatively small."

Indeed, the *Ownbey* Court noted (256 U.S. at page 111, 41 S.Ct. at page 438)

"The condition imposed [the requirement of security from a defendant] has a reasonable relation to the conversion of a proceeding *quasi in rem* into an action *in personam*; ordinarily it is not difficult to comply with—a man who has property usually has friends and credit—and hence in its normal operation it must be regarded as a permissible condition; and it cannot be deemed so arbitrary as to render the procedure inconsistent with due process of law when applied to a defendant who, through exceptional misfortune, is unable to furnish the necessary security . . ."

The foreign attachment procedure under consideration is substantially similar to that used by the federal judiciary in regard to the attachment of a vessel, whose owner may be subject to a lien or judgment and is out of the jurisdiction, 28 U.S.C. § 2464. Here again a remedy is provided for a claimant against a potential debtor or obligor. If the defendant is interested in contesting the suit he may enter an appearance and post bond; but if not, the res remains as security for the debtor obligation as alleged by the plaintiff. In re Whitney Steamboat Corp., 249 U.S. 115, 39 S.Ct. 192, 63 L.Ed. 507 (1919); Garden Homes, Inc. v. Mason, 142 F.Supp. 744, (D.C.N.H., 1956).

The defendant argues that even if this court upholds the constitutionality of the Pennsylvania foreign attachment statute, the court should set bond in accordance with Rule 1272 of the Pennsylvania Rules of Civil Procedure.[1]

The plaintiffs object to such an action claiming that an accounting is necessary because under the terms of the contract this court must take into account not only those damages which have accrued to date but also future damages.

The contract itself, a copy of which is attached to the initial complaint, is one of overwhelming broadness. A preliminary study of the agreement discloses that the defendant has bound itself to pay a commission to the plaintiffs on any of its sales of newsprint to certain parts of the glass industry in perpetuity. Ascertainment of future

---

1. Rule 1272. Dissolution of Attachment. Release of Property. Bond.

"(c) An attachment is dissolved when any person or party
(1) files with the prothonotary a bond, with security approved by the prothonotary, in double the amount of the plaintiff's claim or in such lesser amount as the court may direct, naming the Commonwealth of Pennsylvania as obligee, conditioned to pay the plaintiff, if final judgment is entered in his favor, the amount to which he is found entitled, including interest and costs, or
(2) deposits with the prothonotary, or with the sheriff for the prothonotary, to be held by him upon the same condition as the bond, security in the form of legal tender of the United States in an amount equal to the plaintiff's claim, including probable interests and costs.

damages, therefore, assuming the contract to be valid, would be an undertaking far beyond the potential of the human mind. The complaint itself gives no indication of how much the plaintiffs contemplate in damages beyond the jurisdictional amount of over $10,000.

Inasmuch as the burden is upon the plaintiffs to define their demand, they must give this court some reasonable indication of what amount they contemplate in damages, if indeed damages are in order. Speaking realistically, a future determination of contract validity and defendant's obligation thereunder would probably preclude the necessity for further actions on the agreement. It would be useless for the defendant to continue violating the agreement once it has been found valid and enforceable. Further, the extent of the defendant's past business relationships with both garnishees creates the inference that any further violations would subject the defendant to the risk of future similar attachments.

The plaintiffs will thus be allowed to continue the attachments until (a) the parties themselves can agree to a suitable amount determinative of the bond, or (b) a hearing is had at which the plaintiffs will be required to give some identity to the amount of damages claimed. From the arguments presented and the fact that approximately $70,000 is currently being held subject to the attachment, a bond of $100,000 would appear to be a reasonable basis for lifting the garnishments.

Inasmuch as the defendant has expressed its willingness to put a bond in lieu of attachment and given the right to do so under Rule 1272, the resolution of this issue would be primarily within the good faith and judgment of the parties.

Accordingly, the motion to dissolve the attachment pending disposition and to fix bond pursuant to Pennsylvania Rule of Civil Procedure 1272 will be denied with the conditions as set forth herein.