**Elmer J. JONNET et al., Plaintiffs,**

v.

**DOLLAR SAVINGS BANK OF the CITY OF NEW YORK, Defendant.**

Civ. A. No. 73–0547.

United States District Court, W. D. Pennsylvania.

April 7, 1975.

---

Samuel M. Rosenzweig, Rosenzweig & Rosenzweig, John M. Feeney, Harrington, Feeney & Schweers, Pittsburgh, Pa., for plaintiffs.

J. Tomlinson Fort, Eric P. Reif, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant.

## OPINION

TEITELBAUM, District Judge.

■ Foreign attachment is the process used to commence a civil action by which the property of a foreign, that is, out-of-state debtor is attached for the satisfaction of a debt or claim due the plaintiff. This case, before the Court on defendant's motion to dismiss for

lack of jurisdiction, calls in question the constitutionality of the Pennsylvania Foreign Attachment statutes.[1]

The issue before the Court is not one which lends itself to simplistic application of precedent. A review of the cases raising this and analogous issues in federal courts makes clear that the guidelines of *stare decisis* have long since grown hazy and vague.

In 1969, the United States Supreme Court, in Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349, struck down as unconstitutional the Wisconsin pre-judgment garnishment procedures, holding that such procedures, which permitted a debtor's wages to be frozen without notice to the debtor and without the opportunity for a prior hearing, violated fundamental principles of due process.

In 1970, in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287, the Supreme Court held that procedural due process under the Fourteenth Amendment required that formal termination of welfare benefits to certain recipients be undertaken only after a prior evidentiary hearing.

In 1971, in Lebowitz v. Forbes Leasing and Finance Corp., 326 F.Supp. 1335 (E.D.Pa.), District Judge Edward Becker tested and upheld the constitutionality of the Pennsylvania foreign attachment procedures. In *Lebowitz,* plaintiff Lebowitz filed an equity action in the Court of Common Pleas of Philadelphia County claiming that defendant Forbes, a Delaware corporation, had breached an employment agreement with him. The Forbes corporation was not registered to do business in Pennsylvania and had its principal office in New York. Lebowitz subsequently had a writ of foreign attachment issued under the Pennsylvania Rules of Civil Procedure which claimed an amount due of $200,000.00. The writ was served upon two Philadelphia

banks in which Forbes maintained accounts totalling approximately $75,000.00. Defendant Forbes, successful in having the case removed to the United States District Court on diversity grounds, then filed a motion to quash the attachments after it had entered a general appearance without posting bond. Forbes' motion was based upon its argument that the attachments violated the due process standards enunciated in Sniadach v. Family Finance Corp., *supra.*

Judge Becker's well-reasoned opinion, *supra,* 326 F.Supp. at 1340–41, summarizes the Pennsylvania foreign attachment rules and notes that until the court has obtained *in personam* jurisdiction over the defendant (by appearance or the filing of a bond,) everything is done on a purely ministerial basis by the prothonotary and sheriff without notice or hearing to the defendant. Once the Court has jurisdiction over the defendant the attachment may be dissolved (pursuant to Pennsylvania Rule 1273) if the defendant posts a bond or security or if the plaintiff does not pursue the action diligently.

The *Lebowitz* opinion then thoroughly analyzes the interests of the state, the creditor and the non-resident debtor and arrives at the conclusion that, not only do the debtor's interests predominate over those of the creditor and state, but that the debtor's interests are prejudiced by the use of Pennsylvania's foreign attachment procedures as written. The contrast between the procedural safeguards found in Pennsylvania's Fraudulent Debtor Attachment procedure (Pa. Rule 1286) and the lack thereof as to foreign attachment brings home this point.

In this regard, Judge Becker states:

"Notwithstanding the existence of what may be a meritorious defense, [the debtor] is subject to having his

---

1. Pennsylvania Rules of Civil Procedure 1251 through 1279 (12 P.S.Appendix Rules 1251–1279) ; their use in the federal courts is authorized by Federal Rules of Civil Procedure 64.

property tied up instantly and for years. He is remediless unless he posts a bond, in connection with which he may not only be required to advance a substantial premium, but also to post security and impair his credit. The leverage is instant. He is entitled to a reduction of the garnished sum or of security only if he can show that the possible judgment is less than the amount attached. All the plaintiff need show is a colorable claim. He is not even required to post a bond to protect the defendant. In view of the enormous detrimental impact which such pre-notice and hearing seizure, not even curable by notice and hearing, may have on the business of a debtor, it could be concluded that the interest of the debtor in being free from this type of seizure outweighs the state or creditor interest in protecting the plaintiff, or at least that the rules are not sufficiently narrowly drawn to protect the valid creditor interest alone. The broad sweep of the rules encompasses within its grasp virtually every type of claim, every type of property and every type of defendant without procedural safeguard." *Id.* at 1350.

Despite his "grave doubt" (*Id.* at 1351) as to their constitutionality, expressed above, Judge Becker upheld the constitutionality of the Pennsylvania Foreign Attachment Procedures on the basis of the "apparent vitality" (*Id.* at 1352) of Ownbey v. Morgan, 256 U.S. 94, 41 S.Ct. 433, 65 L.Ed. 837 (1921) and McKay v. McInnes, 279 U.S. 820, 49 S.Ct. 344, 73 L.Ed. 975 (1929). In *Ownbey* and *McKay*, decisions rendered some 40 years previously, (*McKay* without opinion), the Supreme Court respectively upheld the constitutionality of the Delaware and Maine attachment procedures against due process attack. Judge Becker's reasoning in this regard was as follows:

"Certainly [*Ownbey and McKay*] are not expressly affirmed. But, at least, however, their vitality has been recognized. The thrust of the analysis contained in this opinion [Lebowitz] is directed to the theory that, were it to have *Ownbey* and *McKay* before it directly today, the United States Supreme Court might well decide them differently. In view, however, of the language in *Sniadach,* which, at least, recognizes the vitality of *Ownbey* and *McKay,* even if it does not impliedly approve of them, a United States District Judge is not at liberty to ignore their precedential effect." (*footnotes omitted*) *Id.* at 1353.

Judge Becker's decision was reviewed and affirmed by the Court of Appeals for the Third Circuit at 456 F.2d 979 (3d Cir. 1972) under the same caption. Chief Judge Seitz' holding may be summarized as stating that the *Sniadach* opinion does not necessitate a finding that foreign attachment is unconstitutional, especially in light of the availability of Pennsylvania long-arm jurisdiction.

On June 12, 1972, four months after the Third Circuit decision in *Lebowitz* was handed down, the U. S. Supreme Court decided Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). In *Fuentes,* the Florida and Pennsylvania replevin statutes, which permitted the seizure of goods and chattels without prior notice to the possessor or the opportunity for a prior hearing, were struck down as unconstitutional. Reversing in that consolidated case decisions of statutory three-judge courts which had upheld the statutes, the Supreme Court relied heavily upon *Sniadach,* Goldberg v. Kelly, *supra,* and Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1972).[2]

In *Fuentes,* the Supreme Court discussed the "unusual" and "extraordi-

---

2. Wherein the Georgia statute which permitted drivers' licenses to be suspended without a hearing unless the driver allegedly at fault posted security for claimed damages was struck down as violative of due process.

nary" situations in which prior notice and the opportunity for a prior hearing may be dispensed with:

"There are 'extraordinary situations' that justify postponing notice and opportunity for a hearing. Boddie v. Connecticut, 401 U.S. [371], at 379, 91 S.Ct. [780], at 786 [28 L.Ed. 2d 113]. These situations, however, must be truly unusual. Only in a few limited situations has this Court allowed outright seizure without opportunity for a prior hearing. First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance." 407 U.S. at 90–91, 92 S.Ct. at 2000. (footnotes omitted)

This three-part test then must be used to examine the constitutionality of the Pennsylvania foreign attachment procedures. Only that procedural system which fits within these guidelines can escape the *Fuentes'* general conclusion that:

"*Some* form of notice and hearing—formal or informal—is required before deprivation of a property interest that 'cannot be characterized as de minimis'" *Id.* at 90, n. 21, 92 S.Ct. at 1999. (citation omitted) (emphasis in original)

But before the *Fuentes* test is applied to the facts in this case it is necessary to continue the saga of previous consideration of this and analogous issues in federal court.

In 1973, in Roscoe v. Butler, 367 F.Supp. 574 (D.Md.), a statutory three-judge court [3] held the Maryland attachment procedures to be unconstitutional and in violation of the *Fuentes* standards. The procedures in question in *Roscoe* permitted property to be attached without prior notice or hearing in an action *ex contractu* for liquidated damages where two summonses to a resident defendant had been returned *non est* on two separate return dates. The *Roscoe* court found that the procedures passed the first two *Fuentes* tests (inasmuch as the governmental function of securing state jurisdiction was served and prompt action was necessary) but held that the procedures failed the third part of the test. The court concluded that the procedure was unconstitutional because state control had been abdicated. The key to this conclusion was the finding that the issuing clerk's function as to this procedure was solely ministerial and nondiscretionary.

On October 17, 1974, a statutory three-judge court struck down the New York state attachment statute in the case of Sugar and Wrestling Review, Inc. v. Curtis Circulation Co., 383 F. Supp. 643 (S.D.N.Y.). The *Sugar* decision was based primarily on a finding that a defendant under such procedure, which took place without prior notice or hearing, had no meaningful opportunity to vacate the *ex parte* attachment order. This finding in turn arose out of a detailed comparison of the holdings of the Supreme Court in *Fuentes, supra,* and Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).[4]

In *Mitchell,* the constitutional validity of the Louisiana sequestration statute was sustained against a due process attack. As the *Sugar* court pointed out:

"*Mitchell* found several procedural assurances which critically distin-

---

3. Because this case is before the Court on defendant's motion to dismiss for lack of jurisdiction, the requirement of 28 U.S.C. Sec. 2281 that a three-judge court be convened where an allegedly unconstitutional state statute is sought to be enjoined is not applicable.

4. See also United States Industries v. Gregg, 348 F.Supp. 1004 (D.Del.1972).

guished the Louisiana statute from the Florida and Pennsylvania provisions in *Fuentes*: (1) *judicial* approval of the sequestration order was required; (2) the grounds for sequestration had to be clearly demonstrated in the affidavit supporting the writ; (3) the attaching creditor was obliged to post a bond; (4) the buyer (debtor) had the right to regain possession of his property by posting a bond and finally, (5) the statute 'entitled the debtor immediately (after sequestration) to seek dissolution of the writ, which must be ordered unless the creditor "proves the grounds upon which the writ issued," . . . failing which the court may order return of the property and assess damages in favor of the debtor, including attorney's fees.' *Mitchell*, 416 U.S. at 606, 94 S. Ct. [1895] at 1899 [40 L.Ed.2d 406]." 383 F.Supp. at 647. (emphasis in original)

On January 20, 1975, Judge Louis Rosenberg of this Court, the United States District Court for the Western District of Pennsylvania, amended an order entered September 6, 1974, in the case of Balter v. Bato Company, Inc., 385 F. Supp. 420 (W.D.Pa.). In *Balter*, substantively citing only Ownbey v. Morgan, *supra*, the Third Circuit Lebowitz decision and a California State court decision, Property Research Finance Corp. v. Superior Court, 23 Cal.App.3d 413, 100 Cal.Rptr. 233 (1972), Judge Rosenberg upheld the constitutionality of the Pennsylvania foreign attachment procedures.

On January 22, 1975, the Supreme Court decided North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751. Therein, the Supreme Court struck down as violative of the due process clause of the Fourteenth Amendment, the Georgia procedure which permitted garnishment *pendente lite* upon the conclusory affidavit of plaintiff or his counsel alone and reversed a decision of the Georgia Supreme Court which had upheld the procedure.

Writing for the majority, Justice White noted that the Georgia Supreme Court had construed only the *Sniadach* decision and overlooked the importances of Fuentes v. Shevin. Justice White went on:

"The Georgia statute is vulnerable for the same reasons. Here, a bank account, surely a form of property, was impounded and, absent a bond, put totally beyond use during the pendency of the litigation on the alleged debt, all by a writ of garnishment issued by a court clerk without notice or opportunity for an early hearing and without participation by a judicial officer.

"Nor is the statute saved by the more recent decision in Mitchell v. W. T. Grant Co. 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). That case upheld the Louisiana sequestration statute which permitted the seller-creditor holding a vendor's lien to secure a writ of sequestration and, having filed a bond, to cause the sheriff to take possession of the property at issue. The writ, however, was issuable only by a judge upon the filing of an affidavit going beyond mere conclusory allegations and clearly setting out the facts entitling the creditor to sequestration. The Louisiana law also expressly entitled the debtor to an immediate hearing after seizure and to dissolution of the writ absent proof by the creditor of the grounds on which the writ was issued.

"The Georgia garnishment statute has none of the saving characteristics of the Louisiana statute. The writ of garnishment is issuable on the affidavit of the creditor or his attorney, and the latter need not have personal knowledge of the facts. Sec. 46–103. The affidavit, like the one filed in this case, need contain only conclusory allegations. The writ is issuable, as this one was, by the court clerk, with-

out participation by a judge. Upon service of the writ, the debtor is deprived of the use of the property in the hands of the garnishee. Here a sizable bank account was frozen, and the only method discernible on the face of the statute to dissolve the garnishment was to file a bond to protect the plaintiff creditor. There is no provision for an early hearing at which the creditor would be required to demonstrate at least probable cause for the garnishment. Indeed, it would appear that without the filing of a bond the defendant debtor's challenge to the garnishment will not be entertained, whatever the grounds may be.

"Respondent also argues that neither Fuentes nor Mitchell is apposite here because those cases dealt with the application of due process protections to consumers who are victims of contracts of adhesion and who might be irreparably damaged by temporary deprivation of household necessities, whereas this case deals with its application in the commercial setting to a case involving parties of equal bargaining power. See also Sniadach v. Family Finance Company of Bay View, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). It is asserted in addition that the double bond posted here gives assurance to petitioner that it will be made whole in the event the garnishment turns out to be unjustified. It may be that consumers deprived of household appliances will more likely suffer irreparably than corporations deprived of bank accounts, but the probability of irreparable injury in the latter case is sufficiently great so that some procedures are necessary to guard against the risk of initial error. We are no more inclined now than we have been in the past to distinguish amoung different kinds of property in applying the Due Process Clause." 419 U.S. 601, 608, 95 S.Ct. 719, 722, 42 L.Ed.2d 751, 757–8 (footnote omitted).[5]

BACKGROUND

This case was commenced on July 2, 1973 when plaintiffs Elmer J. Jonnet, Jonnet Development Corp. and Jonnel Enterprises, Inc. (Jonnet) filed a complaint in assumpsit under the Pennsylvania foreign attachment procedures. The basis for said complaint was plaintiff's allegation that defendant, Dollar Savings Bank of New York (Dollar Savings), a New York corporation which is not registered to do business in Pennsylvania, wrongfully failed to honor a mortgage commitment for $1,100,000.00, issued in New York by Dollar Savings on January 6, 1967, to be secured by a mortgage on the Monroe Plaza Shopping Center in Monroeville, Pennsylvania. Claimed damages amount to $1,285,394.74.

On July 5, 1973, plaintiffs filed a praecipe for writ of foreign attachment pursuant to Pennsylvania Rule of Civil Procedure 1255 which was issued by the U. S. Clerk of Court that same day. These writs were then served by the U. S. Marshal on garnishees Chrysler Realty Corporation and A–1 Builders, Inc.— Pennsylvania corporations with offices in Allegheny County.

The attachments, issued on the basis of the praecipe, which gives no indication of the merits of plaintiffs' claim, issued without the benefit to defendant of prior notice or judicial hearing, ex parte or otherwise, attached the amounts due and owing from Chrysler and A–1. Chrysler's total indebtedness to Dollar Savings in July 1973 was $599,657.00 which called for monthly installment payments of $4,605.00; whereas A–1's indebtedness was $763,654.11 with monthly installments of $6,000.00. The installments due August 1, 1973 were not paid to defendant by the garnishees by reason of the attachments.

On August 20, 1973, I granted defendant's motion to dissolve the attachments and permitted Dollar Savings to dissolve the attachments by depositing United

5. See also Guzman v. Western State Bank of Devils Lake, 516 F.2d 125 (8th Cir. 1975).

States 6% Treasury Notes totalling $50,000.00 with the Clerk of this Court.

## DISCUSSION

To my mind, the litany of "without prior notice or hearing" set out in the above-mentioned opinions which declare various pre-judgment procedures violative of due process is determinative of the issue in this case. This conclusion is borne out by application of the three-part *Fuentes* test and by comparison of the *Fuentes* and *Mitchell* doctrines to the Pennsylvania foreign attachment procedures.

The first part of the *Fuentes* test states that the seizure without prior notice or hearing must be necessary to secure an important governmental interest. As stated in United States Industries v. Gregg, *supra*:

> "[A] state has a legitimate interest in the exercise of judicial jurisdiction with respect of property within its borders. Seizure for the purpose of securing such judgment in a state court, accordingly, serves . . . 'an important public interest.'" (citing *Fuentes*) *Id.* 348 F.Supp. at 1021.

■ The operative assumption here is that the state's interest in securing judgment is served because, as is admittedly true in this case, only through the initial exercise of *quasi-in-rem* jurisdiction can a court secure *in personam* jurisdiction over a non-resident defendant. (See 42 P.S. Sec. 8309(c), the section of the Pennsylvania long-arm statute which excepts defendant's mortgage loan activities from the definition of "doing business.") In this regard, however, it would seem that Pennsylvania's foreign attachment procedures are overbroad in that no distinction is made therein between their applicability to defendants such as Dollar Savings whose only amenability to service is through foreign attachment, and their applicability to other foreign defendants, over whom judg-

ment may be obtained through use of the long-arm statute. This distinction is noted in the Third Circuit *Lebowitz* opinion. 456 F.2d at 982.

The second part of the *Fuentes* test states that prior notice or hearing may be unnecessary where there is a need for very prompt action. Frankly I am unable to see the need for very prompt action in this instance. There would seem to be little likelihood that defendant Dollar Savings or any other similarly situated defendant would be able to so quickly dispose of million dollar long-term mortgage assets as to be able to avoid appearance in Pennsylvania. Nevertheless, because the foreign attachment procedure is no exception to the general rule that legislation must be written in broad enough terms to apply to a variety of situations, I am reluctant to hold that there was *no* need for prompt action here or that such need can never arise.

■ The third *Fuentes* test of constitutionality is to determine whether the procedure in question permits the state to keep strict control over its monopoly of legitimate force. It is in this area that the Pennsylvania foreign attachment procedures are most clearly lacking. I hold that the Pennsylvania foreign attachment procedures are unconstitutional because the state has abdicated effective control over these procedures.

■ The *sine qua non* for due process as to any prejudgment procedure is the opportunity for responsible and impartial official evaluation of the need for resort to such remedy. It is to insure the availability of such evaluation that the requisites of prior notice and hearing have been set. Stated negatively, *Sniadach*, *Fuentes* and their progeny stand for the proposition that due process is not served when one party to a dispute [6] may, by mere unexamined ap-

---

6. The irony of this case is that here the party which would superficially appear to possess the superior economic leverage (defend-

ant Dollar Savings) finds itself challenging the constitutionality of a procedure whose greatest potential evil lies in its abuse by

plication to an official whose function is solely ministerial bring to bear the state's enormous confiscatory power on its behalf.

Itemization of the protective features found critical by the Supreme Court in *Mitchell, supra,* demonstrates that none of these is found in the Pennsylvania foreign attachment procedures: 1) judicial approval of the order, that is to say evaluation by an official with the discretion to either accept or reject the application; 2) the setting forth of facts in support of the application by means of affidavit or otherwise; 3) the obligation of the attaching creditor to post bond, and 4) the right of the debtor to regain possession by posting bond.

While the Pennsylvania foreign attachment rules do contain provision for dissolution of the writ, such as was granted in this case, they contain no provision for review and evaluation of the merits of the claim such as is in the fifth *Mitchell* standard. This lack was critical to the *Sugar* court, which to a large extent based its ruling on the fact that a defendant had "no meaningful opportunity to vacate an order of attachment granted *ex parte* and without prior notice" 383 F.Supp. at 650. In addition, of course, there is no provision for redress to the wronged debtor by means of damages or attorneys fees as is included in the fifth Mitchell standard. In sum, under the Pennsylvania procedures at no time does a plaintiff have to make any showing of the validity of his claim, let alone subject that claim to meaningful contest.

I have no intention of rewriting the Pennsylvania foreign attachment rules; that is the task of the Pennsylvania Legislature. As stated in *Ownbey, supra:*

"However desirable it is that the old forms of procedure be improved with the progress of time, it cannot

rightly be said that the Fourteenth Amendment furnishes a universal and self-executing remedy. Its function is negative, not affirmative, and it carries no mandate for particular measures of reform." 41 S.Ct. at 438.

However, because of their failure to comport with the specific constitutional guidelines spelled out in *Sniadach, Fuentes* and *Mitchell,* I am compelled to hold these procedures unconstitutional as written. Whatever doubt remained as to this issue has been removed by the Supreme Court's decision in North Georgia Finishing, Inc. v. Di-Chem, Inc., *supra.* Therefore, for the reasons and authorities stated above, I will grant defendant Dollar Savings' motion to dismiss for lack of jurisdiction. An appropriate order in accordance with this Opinion shall be entered.

The foregoing shall constitute findings of fact and conclusions of law in accordance with F.R.Civ.P. 52(a).

the commercially powerful. The irony demonstrates the essential frailty of reliance upon conventional political/economic wis-

dom. Here, I have based my decision on the axiom that what is not fair is not due process.