396 A.2d 654

G. H. McSHANE CO., INC., a corporation, Appellant,

v.

The TRAVELERS INDEMNITY COMPANY, a corporation, Appellee.

Superior Court of Pennsylvania.

Argued April 11, 1978.

Decided Dec. 28, 1978.

James R. Sweeney, Pittsburgh, for appellant.

Edmund K. Trent, Pittsburgh, for appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

HESTER, Judge:

Before the court are consolidated appeals by J. H. McShane Co., Inc. (McShane); the appeal at No. 310 being from the order of the court below denying McShane's Motion for Judgment on the Pleadings; the appeal at No. 475 being from the order of the court below granting The Travelers Indemnity Company (Travelers) Motion for Judgment on the Pleadings.

The facts may be briefly summarized as follows:

On October 31, 1973, McShane, a Pennsylvania corporation engaged in business as an insurance agency, entered suit against Warren A. McFadden, a Florida resident, in the Court of Common Pleas of Allegheny County, Pennsylvania,

at No. 1105 January Term, 1974 (the McFadden suit) to recover premiums allegedly totaling $30,784.00 on policies of insurance which McShane had placed for McFadden with various insurance carriers. The McFadden suit was instituted by the filing of a Praecipe with the prothonotary and obtaining and serving a Writ of Foreign Attachment on three garnishees in Pittsburgh, Pennsylvania, all in compliance with the then Pennsylvania Rules of Civil Procedure relating to actions in foreign attachments (Pa.R.C.P. 1251–1279). Shortly thereafter, McShane filed its Complaint in Foreign Attachment. On December 14, 1973, a general appearance was entered for McFadden and his Answer to Complaint in Foreign Attachment was filed on January 22, 1974.

In order to obtain the release of the property from the McShane attachment, McFadden on January 14, 1974 filed a bond in the penal amount of $61,568.00 with appellee, Travelers, as surety which bond (No. 295A5070) was executed and delivered that date by Travelers. Said surety bond titled "Undertaking on Release of Garnishment" provides that Travelers:

" . . . does hereby, pursuant to the Statute in such case made and provided, undertake that the said defendant (McFadden) will, on demand, pay to the plaintiff the amount of any judgment which may be recovered in the action against the said defendant not exceeding the sum of SIXTY ONE THOUSAND FIVE HUNDRED SIXTY-EIGHT and 00/100 DOLLARS ($61,568.00)." (R.11 a).

Immediately after the Travelers' bond was filed with the court, the garnishments which had been obtained against rents due to McFadden were released, and the McFadden suit then continued as one in assumpsit, which suit was ultimately resolved when McShane obtained a consent judgment on September 17, 1976 against McFadden in the amount of $22,000.00. (R. 12a, 27a).

Despite demand by McShane, the $22,000.00 consent judgment was never paid by McFadden. Thereafter, McShane instituted the present action in the Court of Common Pleas

of Allegheny County, Pennsylvania, Civil Division, at No. G.D. 76–23714 against Travelers as the surety on the attachment bond claiming $22,000.00 plus interest from the date of the consent judgment entered against McFadden (September 17, 1976). Travelers filed an Answer and New Matter on November 3, 1976 wherein specific "due process" and "equal protection" constitution issues were raised. Following McShane's reply to Travelers Answer and New Matter, McShane filed its Motion for Judgment on the Pleadings on January 13, 1977.

Following oral argument thereon, the lower court en banc, on September 30, 1977, issued its Opinion and Order denying McShane's Motion for Judgment on the Pleadings and further granted Travelers twenty days in which to file a counter-motion for judgment on the pleadings which was timely filed.

On October 28, 1977, McShane filed the instant appeal at No. 310 April Term, 1978 from the lower court's denial of its Motion for Judgment on the Pleadings. On December 20, 1977, the lower court filed its Order granting the Travelers' Motion for Judgment on the Pleadings, and on·December 28, 1977, McShane filed its appeal at No. 475 April Term, 1978 from that Order.

Said appeals were consolidated and oral arguments were heard on said consolidated appeals before this court in April, 1978.

The complex issue before this court is whether appellee, as the compensated surety in an action commenced in foreign attachment, may raise the jurisdictional defense of the unconstitutionality of the Pennsylvania foreign attachment procedure when said constitutional issues were not pursued by its principal, and in so doing, be relieved of its apparent financial obligation under the terms and conditions of its surety bond.

The lower court responded in the affirmative.

We agree and therefore affirm.

The lower court concluded that the recent cases, starting with *Jonnet v. Dollar Savings Bank,* 392 F.Supp. 1385 (W.D.

Pa.1975) affirmed 530 F.2d 1123 (3rd Cir., 1976), wherein the Pennsylvania foreign attachment statutes (Pa.R.C.P. 1251–1279) were declared unconstitutional, "affect not only the jurisdiction of the court over the debtor but the entire foreign attachment procedure including the dissolution bond." (R. 33). The *Jonnet* court concluded, "I am compelled to hold these procedures (Pennsylvania Foreign Attachment Rules) unconstitutional, as written." (p. 1393).

Thereafter, the Pennsylvania Supreme Court reviewed the *Jonnet* (supra) decision and resolved in *Schreiber v. Republic Intermodal Corporation, et al.,* 473 Pa. 614, 375 A.2d 1285, 1289 (1977), that *Jonnet* was to be applied retrospectively:

> "The decision in *Jonnet* holding that Pennsylvania's rules governing foreign attachment are unconstitutional did not establish a new principle of law which might be applied prospectively only; i. e., to writs issued after the date of decision. In *Chevron Oil Company v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the United States Supreme Court stated that the threshold test in deciding whether a new decision might be given prospective application only is whether the decision establishes a new principle of law, either by overruling clear past precedent or by deciding an issue of first impression whose resolution was not clearly overshadowed. 404 U.S. at 106, 92 S.Ct. at 355.[6] Only such a new principle of law may

> [6] The other relevant factors identified by the Court, which are considered only when the decision establishes a new principle of law, involve looking to the prior history of the rule in question to determine whether its purpose and effect would be benefited by nonretrospective treatment, and weighing the inequity of retrospective application. 404 U.S. at 106–07, 92 S.Ct. at 355.

> qualify for nonretrospective application. The decision in *Jonnet* does not meet this initial test, for the constitutional defects in Pennsylvania's rules governing foreign attachment were patent in light of recent precedents of the United States Supreme Court."

A similar conclusion was reached by the Allegheny County Court of Common Pleas in *Pittsburgh National Bank v. C. I. Mortgage Group,* 125 P.L.J. 99, where *Jonnet* was again

afforded retroactive effect, thus giving rise to the cancellation and discharge of a surety bond in a foreign attachment proceeding. See also *Mel Richman, Inc. v. August Siekmann Mobel-Werke, K. G.,* 411 F.Supp. 690 (1976).

Appellant McShane argues that the declared unconstitutionality of the Pennsylvania Foreign Attachment Rules as said unconstitutionality obviously applies to the principal McFadden, is completely irrelevant and nondispositive to appellee's *independent contractual liability* under *its* bond in favor of appellant. Appellant further contends that appellee's bond liability became established and enforceable as a contractual obligation independent of any defenses which the principal McFadden may have had available to him at the time the Consent Judgment was entered on September 17, 1976.

We do not agree.

At the time of the entry of the Consent Judgment in September of 1976, the *Jonnet* Opinion had already issued and declared the Pennsylvania foreign attachment procedure unconstitutional. Subsequently, as noted above, other forums have given *Jonnet* retroactive effect.

As the lower court in the instant case accurately points out, when a statute is declared unconstitutional, it is "in legal contemplation as inoperative as though it had never been passed." *Norton v. Shelby County,* 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178 (1886).

Moreover, we adopt the principle of law articulated in *Pacific National Bank of Boston v. Mixter,* 124 U.S. 721, 8 S.Ct. 718, 31 L.Ed. 567 (1888), wherein the United States Supreme Court concluded that where a surety bond was executed to dissolve an attachment, and where the attachment was in actuality prohibited by law, the surety bond is similarly void, unenforceable and uncollectible.

As the *Mixter* court opined:

"In the present case, however, the question is whether the bond creates a liability when the attachment on which it is predicated was actually prohibited by law. In other words, whether an illegal and therefore a void attachment

is sufficient to lay the foundation for a valid bond to secure its formal dissolution. The bond is a substitute for the attachment, although not affected by all the contingencies which might have discharged the attachment itself. *Carpenter v. Turrell,* 100 Mass. 450, 452; *Tapley v. Goodsell,* 122 Mass. 176, 182. Such being the case, *it necessarily follows that if there was no authority in law for the attachment, there could be none for taking the bond. If the attachment itself is illegal and therefore void, so also must be the bond which takes its place . .*"

" . . . But here the difficulty is that there was no lawful attachment, and therefore no lawful authority for taking any bond whatever. The bond is consequently neither good under the statute nor at common law, because there is no sufficient foundation to support it." (pp. 728–729, 8 S.Ct. p. 722)

For the foregoing reasons, judgment of the lower court is affirmed.

SPAETH, J., files a concurring opinion, in which PRICE, J. joins.

HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, concurring:

While I agree with the result reached by the majority, I feel obliged to point out just what, in my view, the majority is, and is not, holding in this case.

I think it may be said that the majority opinion should not be read as affecting established principles of the law of suretyship. Apparently a consent judgment against the principal may be attacked by the surety if the surety did not participate in the suit against the principal in some cases, but not in cases where the surety is a judgment surety. *See Pennsylvania Turnpike Commission v. United States Fidelity & Guaranty Co.,* 412 Pa. 222, 194 A.2d 423 (1963); *Share v. Hunt,* 9 Serg. & Rawl. 407 (1823). A judgment surety is bound even by a consent judgment against the principal

unless there is fraud or collusion. *See Pennsylvania Turnpike Commission v. United States Fidelity & Guaranty Co., supra.* This is so because the surety has promised to pay the judgment and is liable on its express promise even if the judgment is not the product of hostile litigation. *See generally* 51 A.L.R. 1489 (1927). Defenses affecting the amount of the judgment that arise after the judgment may be pleaded by the surety as a set off to the amount claimed in the creditor's action on the bond. *Clauss v. Ainey,* 279 Pa. 534, 124 A. 183 (1924). Thus, as a matter of the law of suretyship, if in this case Travelers is deemed to be a judgment surety, it would apparently be bound on its promise even though the underlying judgment was obtained by consent. Evidently Travelers recognizes this, for it is not attacking the judgment but the legality of the bond.

I think it also may be said that the majority's opinion should not be read as establishing a rule under which a violation of McFadden's constitutional rights somehow also amounted to a violation of Traveler's rights. Here there was no violation of Traveler's constitutional rights.

These considerations lead me to read the majority opinion as holding only that the illegality of the attachment vitiated the surety bond. My own way of reaching this conclusion is as follows: Rule 1272 of the Pennsylvania Rules of Civil Procedure provides:

(a) An attachment is not dissolved by service of the writ or complaint on the defendant nor by his appearance.

(b) An attachment is not dissolved by the death or dissolution of a defendant or garnishee.

(c) An attachment is dissolved when any person or party

(1) files with the prothonotary a bond, with security approved by the prothonotary, in double the amount of the plaintiff's claim or in such lesser amount as the court may direct, naming the Commonwealth of Pennsylvania as obligee, conditioned to pay the plaintiff, if final judgment is entered in his favor, the amount to which he is found entitled, including interest and costs, or

(2) deposits with the prothonotary, or with the sheriff for the prothonotary, to be held by him upon the same condition as the bond, security in the form of legal tender of the United States in an amount equal to the plaintiff's claim, including probable interest and costs.

Thus, the rule compelled McFadden to have Travelers post the bond; that was the only way the attachment could be dissolved. It follows that Travelers' bond was a direct result of the attachment, which is to say, of an unconstitutional procedure. Had Travelers intervened in the action against McFadden and attempted to have the bond dissolved, the bond should have been dissolved. As it was, Travelers did plead the defense of the invalidity of the bond at the first opportunity. Thus, by saying that the bond was of no effect the majority cannot be saying that any past payments made to creditors by sureties on foreign attachment bonds may be collaterally attacked, but only that the illegality of the attachment is a defense to be raised in the action to collect on the bond, and that if not so raised, the defense will be waived.

For these reasons, I concur in the order affirming the judgment of the lower court.

PRICE, J., joins in this concurring opinion.