473 A.2d 1379

**Frances GRUBE, Appellant,**

v.

**Manrico TRONCELLITI, M.D.**

Superior Court of Pennsylvania.

Argued Feb. 16, 1983.

Filed March 23, 1984.

Roger S. Spalding, Philadelphia, for appellant.

A. Arthur Hanamirian, Philadelphia, for appellee.

Before CERCONE, President Judge, and JOHNSON and MONTEMURO, JJ.

PER CURIAM:

This is an appeal from the judgment entered on the order of Court of Common Pleas of Montgomery County, per the Honorable Mason Avrigan, denying appellant's motion for new trial and motion in arrest of judgment. We find that the trial court erroneously applied the law and therefore grant a new trial.

The appellant herein instituted a medical malpractice action on August 3, 1978, by filing a complaint in Trespass with the Administrator of the Arbitration Panels for Health Care in accordance with the Pennsylvania Health Care Services Malpractice Act [1] (hereinafter "Act").

In May of 1980, a hearing was conducted before a three member arbitration panel as required by Section 402 of the Act. 40 P.S. § 1301.402. The arbitrators decided unanimously to award the appellant $140,000.00. Thereafter, the appellee, Dr. Manrico Troncelliti, took an appeal *de novo* to

---

1. Act of October 15, 1975, P.L. § 390, No. 111, § 101 et seq., 40 Pa.C.S.A. § 1301.101 *et seq.*

the Court of Common Pleas of Montgomery County in accordance with Section 509 of the Act. 40 P.S. § 1301.-509.[2]

On September 15, 1980, the case was called to trial, but after jury selection, appellee's counsel became ill and a mistrial was declared. On September 22, 1980, the Pennsylvania Supreme Court decided *Mattos v. Thompson*, 491 Pa. 385, 421 A.2d 190 (1980), in which Section 309 of the Act, 40 P.S. § 1301.309,[3] was found to be unconstitutional.

The instant case proceeded to trial on September 29, 1980, before a judge and jury. At the close of the case in chief, appellant made a motion to read into the record the findings of fact and the decision of the arbitrators as provided by Section 510 of the Act, 40 P.S. § 1301.510.[4] The appellee objected to the introduction of such evidence on the basis of *Mattos* and the trial court sustained the objection. At the close of the trial, a verdict was returned in favor of the appellee. The appellant's post-verdict motions were denied and this appeal followed.

Appellant raises only one question for our consideration. Did the trial court err in refusing to permit the appellant to introduce the decision and findings of fact of the arbitrators at the *de novo* trial? We find the trial court was in error.

2. § 1301.509 **Judicial review**

Appeals from determinations made by the arbitration panel shall be a trial *de novo* in the court of common pleas in accordance with the rules regarding appeals in compulsory civil arbitration and the Pennsylvania Rules of Civil Procedure.

3. § 1301.309 **Jurisdiction of arbitration panel**

The arbitration panel shall have original exclusive jurisdiction to hear and decide any claim brought by a patient or his representative for loss or damages resulting from the furnishing of medical services which were or which should have been provided. The arbitration panel shall also have original exclusive jurisdiction to hear and decide any claim asserted against a nonhealth care provider who is made a party defendant with a health care provider.

4. § 1301.510 **Admissibility of record on appeal**

Where an appeal is taken the decision, and findings of fact, if any, of the arbitration panel shall be admissible as evidence before the court; provided, however, that any award of damages shall not be admissible as evidence.

In order to establish the groundwork for our analysis herein, it is helpful to look to two cases in which our supreme court dealt with attacks on the Act; i.e., *Mattos v. Thompson, supra;* and its progenitor, *Parker v. Children's Hospital of Philadelphia,* 483 Pa. 106, 394 A.2d 932 (1978).

In *Parker,* the court upheld the validity of the compulsory arbitration provisions of the Act. The appellants therein raised several grounds upon which they sought to have the Act found unconstitutional. Two questions decided by the *Parker* court are most pertinent herein. First, they decided that Section 309, 40 P.S. § 1301.309, requiring the parties to proceed first to arbitration prior to receiving a trial by jury, did not violate the provision of the Pennsylvania Constitution guaranteeing the right to a trial by jury. *Id.,* 483 Pa. at 120, 394 A.2d at 938. Second, they decided that Section 510 of the Act, 40 P.S. § 1301.510, did not offend Article I, Section 6 of the Pennsylvania Constitution (by putting evidence before the jury which would interfere with their function as the final arbiter of fact).

In specifically upholding the validity of Section 510, the court said:

> While this section admittedly is designed to discourage the meritless appeal it does not foreclose the right to seek a jury resolution of the controversy nor does it abridge or curtail any of the incidents of that right. This section speaks only to the admissibility of the decision and the findings of fact of the arbitrators. It neither places that information in the status of a presumption nor does it shift the burden of going forward with evidence or change the burden of persuasion. The jury remains the final arbiter of the issue raised and the facts presented.

*Id.* 483 Pa. at 122–23, 394 A.2d at 941.

Less than two years later, the court rendered its decision in *Mattos v. Thompson, supra,* in which Section 309 of the Act was again challenged on constitutional grounds; specifically, it was contended that:

> (1) The arbitration process created by the Act is filled with such interminable delay that it violates the guaran-

tees in the state constitution of access to the courts, justice without delay and the right to jury trials.

(2) By requiring litigants to try a complicated and expensive malpractice action in arbitration prior to being permitted a jury trial, the Act places an onerous and impermissible condition on the right to jury trials.

(3) The Act and its procedures deny medical malpractice victims procedural due process guaranteed by the fourteenth amendment to the United States Constitution because the physician member of the panel has an impermissible financial interest in the outcome of the litigation.

*Id.*, 491 Pa. at 388, 421 A.2d at 191. The court considered the empirical evidence presented by the appellant and found that it supported the first and second contentions. They held:

We are compelled, therefore, to declare unconstitutional section 309 of the Act, 40 P.S. § 1301.309, giving the health care arbitration panels 'original exclusive jurisdiction' over medical malpractice claims because the delays involved in processing these claims under the prescribed procedures set up in the Act result in an oppressive delay and impermissibly infringes upon the constitutional right to a jury.

*Id.*, 491 Pa. at 396, 421 A.2d at 196. The language employed leaves little doubt as to the scope of the court's decision. Only Section 309 was found to be unconstitutional. The court was not called upon to decide, nor did they decide, the constitutionality or continuing efficacy of those remaining provisions of the Act pertaining to arbitration. It is the latter question which is before us in the present case.

We note initially that the Act contains a severability clause, Act of October 15, 1975, P.L. 390, No. 111, § 1007,[5]

---

5. Section 1007.1. Severability.—If any provision or clause of this act or the application thereof to any person or situation is held invalid, such invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of this act are declared severable.

which expresses the legislative intent that the provisions of the Act are to be separable. We further note the general principle of construction embodied in the Statutory Construction Act, 1 Pa.C.S.A. § 1925,[6] which is coextensive with the more specific provision.

▉ Our courts have frequently faced the problem of whether or not to sever partially valid and partially invalid statutory provisions. The authoritative case of *Saulsbury v. Bethlehem Steel Company*, 413 Pa. 316, 196 A.2d 664 (1964), is particularly instructive. In *Saulsbury*, the court stated that:

> In determining the severability of a statute or ordinance, the legislative intent is of primary significance. However, the problem is twofold: The legislating body must have intended that the act or ordinance be separable and the *statute or ordinance must be capable of separation in fact.* The valid portion of the enactment must be independent and complete within itself. See, Sutherland, Statutory Construction, Vol. 2 (3d ed. 1943) §§ 2403, 2404, and cases cited; also, Cooley, Constitutional Limitations, Vol. 1, (8th ed.) Chapter VII, at 368.

*Id.,* 413 Pa. at 321, 196 A.2d at 667. (emphasis in original). *See also Commonwealth v. Liquor*, 46 Pa.Commw. 490, 407 A.2d 83 (1979); *G.H. McShane, Co. v. Travelers Indemnity Co.,* 262 Pa.Super. 80, 396 A.2d 654 (1978). In the case of Section 510, 40 P.S. § 1301.510, the legislature, by inclusion of the severability clause, has expressed its intent that the constitutional provisions should stand even as their uncon-

---

6. § 1925. Constitutional construction of statutes

The provisions of every statute shall be severable. If any provision of any statute or application thereof to any person or circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless the court finds that the valid provisions of the statutes are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

stitutional adjunct has fallen. Once the legislature has expressly indicated an intention that certain legislation should be severable, that intention must be given great weight.

In *Commonwealth, Department of Education v. First School,* 471 Pa. 471, 370 A.2d 702 (1977) a non-public school aid program, which had been declared unconstitutional for parochial schools, was found by the court to be valid for non-sectarian schools. In *First School,* as in the instant case, the General Assembly expressed its intent that the legislation be severable. Justice Roberts, speaking for the court, addressed the severability issue in footnote 16:

16. Whether or not one part of a statute can survive the excision of another part which has been held invalid is a question of statutory construction, and in determining it the court searches for the intention of the legislature. In the present instance the legislature has *expressed* its intention [by including severability clause].... While such an expression of legislative intent is not always conclusive, ordinarily it is but little short of a mandate. *Rieck-McJunkin Dairy Co. v. Milk Control Commission,* 341 Pa. 153, 162, 18 A.2d 868, 871–72 (1941). (Emphasis in original).

*Id.* 471 Pa. at 479, 370 A.2d at 706. Since the General Assembly in the case at bar waited until after the Act had been challenged in court to express an intention that the Act be severable, their expression should be considered "little short of a mandate."

■ The more difficult question is whether Section 510 is capable of separation in fact. Section 309 found to be unconstitutional in *Mattos* was the section of the Act that granted arbitration panels "original exclusive jurisdiction" of medical malpractice claims. What remained after *Mattos* was a voluntary arbitration procedure for handling medical malpractice claims rather than a mandatory one. Section 510 of the Act permits the finding of the panel to be admitted into evidence at a subsequent trial. The purpose of this section was to discourage meritless appeals and

prevent the arbitration process from being used as a dress rehearsal. In our view this purpose is equally applicable whether the arbitration process is mandatory or voluntary.

■ In light of the great weight which must be afforded the expressed intention of the legislature and because Section 510 is capable of separation in fact, we must conclude that Section 510 remains valid. Consequently, we conclude that the trial court erred in not permitting the appellant to place the findings of the arbitration panel before the jury and that the error necessitates a new trial. Thus, the judgment of the trial court is vacated and the case remanded for a new trial.

Vacated and remanded. Jurisdiction is not retained.